2 Ill. App.3d 934 (1971)
274 N.E.2d 658
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
JAMES F. PALMER, Defendant-Appellant.
No. 70-175.
Illinois Appellate Court  Third District.
October 28, 1971.
*935 Theodore A. Gottfried, of Defender Project, of Ottawa, for appellant.
James N. DeWulf, State's Attorney, of Rock Island, for the People.
Affirmed in part, reversed in part and remanded.
Mr. JUSTICE STOUDER delivered the opinion of the court:
Defendant-Appellant, James Palmer, was indicted for the offense of forgery. After accepting defendant's plea of guilty the trial court held a hearing on defendant's application for probation, denied same and sentenced the defendant to a term of from one to seven years in the penitentiary. The only assignment of error on this appeal is defendant's argument that the sentence imposed was excessive and that the trial court erred in denying his application for probation.
The facts which make up this record represent the evidence presented at the hearing on defendant's application for probation.
The defendant was married before he graduated from high school. After graduation the defendant worked as a laborer for four years. He was then twenty-one years old and he and his wife had two children.
In the eighteen months between August 1953 and February 1955, the defendant was divorced, was convicted of forgery for which he served six months in jail and a three month parole, and was convicted again of uttering fictitious checks. For the latter conviction he served three years in the penitentiary and two years on parole.
Between 1958 and 1962 the defendant worked as a bakery route salesman and supervisor. Then the defendant moved to Kearney, Nebraska, where in November, 1962, C.L. Dungan, the branch manager of Businessmen's Insurance Company, hired the defendant as an insurance salesman. In two years the defendant had worked his way up to the position of manager and had three men working for him. At this point Dungan suffered a heart attack and was forced to retire from the insurance business for about two years.
During Dungan's retirement the defendant continued working for Businessmen's Insurance. In 1966, defendant married Ora Mason. Ora Mason had four children. Three of them were living with her when she married the defendant. Defendant's wife, his step-daughter and a neighbor *936 all testified in defendant's behalf indicating that he was a good husband and step-father. According to his wife, defendant had some drinking problems at the time of their marriage but he had gotten over them shortly after their marriage.
At about the time of defendant's marriage in 1966, Dungan had recovered his health and opened another office in Peru, Illinois. Dungan offered the defendant a territory centering around the Quad Cities. Since Ora Mason welcomed a fresh start for herself and her children, the defendant accepted the offer and moved his family to Hampton, Illinois.
This cause arose in late 1967, about ten months after defendant and his family moved to Hampton, Illinois. The defendant had just contracted to purchase a house and a new car when his wife, who had been working, became ill and had to undergo emergency surgery.
At that point the defendant received a premium refund check for one of his customers, Mrs. Iva Dillingham. She told the defendant to apply the proceeds of the check ($114.35) to another policy on which premium payments would not be due for two years. Instead, the defendant endorsed her name and his own on the back of the check, cashed the check, and applied the proceeds to his own household expenses. The defendant intended to make good the check before the premium payment became due, but was not able to do so.
The defendant cashed this check at a bank where Mrs. Dillingham and he had checking accounts. Mrs. Dillingham did not find out about the defendant's failure to apply the refund to her premium until late 1969. At her request, the insurance company sent her a copy of the cancelled check showing that defendant had endorsed and cashed the check at the Bank of Silvis in October, 1967.
Meanwhile, during the early part of 1969, the defendant had overdrawn his checking account at the Bank of Silvis. The bank permitted the defendant to add the amount of the overdraft to a personal loan on which he was then paying the bank. In June of 1969, the defendant filed a Wage Earner plan in bankruptcy. The loan from the Bank of Silvis was one of the debts scheduled in that action.
Mrs. Dillingham took the photostat of the refund check and showed it to the President of the Bank of Silvis. The President testified, "* * * I refunded Mrs. Dillingham her money, to give me the check, we would see if we couldn't collect it."
The bank charged the check off to its "bad checks account" and took the check to the Sheriff of Rock Island County. When the defendant was advised that the bank had filed a criminal complaint, he and his employer, Dungan, went to the President of the bank.
The President refused to accept restitution for the refund check. He *937 advised Dungan that in order for the bank to do anything, they would have to be paid not only the amount of the check, but the full amount of the loan which had been scheduled as part of the Wage Earner Plan.
The probation officer recommended that probation be denied. This recommendation was based upon an interview with the defendant and the officer's perusal of the police reports in the case.
The defendant's employer, Dungan, testified that the defendant was a sales manager supervising two salesmen in a three county area. He also testified that if the defendant was admitted to probation, he could continue in that employment.
The trustee of defendant's Wage Earners Plan testified that the defendant had been and was making an honest effort to pay off his debts rather than have them excused in straight bankruptcy. To that date, the defendant had paid off nearly $1,800.00 on the plan. In the trustee's opinion, all the debts would be paid eventually.
On appeal defendant argues the sentence of one to seven years in the penitentiary is excessive and that his application for probation should have been granted. On the other hand the State argues that the sentence is reasonable and proportionate to the offense charged.
 1-3 Review of sentences is provided for by Supreme Court Rule 615(c). Such power of review is ordinarily exercised with caution and circumspection, courts being reluctant to disturb trial court decisions in this regard. (People v. Taylor, 33 Ill.2d 417, 211 N.E.2d 673.) Sentencing and its role in our criminal justice system is receiving increasing attention. The basic assumption is that sentencing should be aimed to reintegrate the defendant into the society. As indicated in People v. McClendon, (Ill. App.2d), 265 N.E.2d 207, probation as contemplated by Ill. Rev. Stat. 1969, ch. 38, par. 117-1(a), is a positive tool in the sentencing process. Where incarceration is not required for rehabilitation or for the protection of society it serves no social utility in the future protection of society.
 4 It is the position of the State apparently shared by the trial court, that in view of the nature of the offense and defendant's prior record, incarceration for a period within the limits designated by the statute can not be deemed excessive. Such an argument does not in our judgment represent an adequate application of the principles applicable to sentencing. No reasons are advanced by the State suggesting that incarceration is required for the protection of society or for rehabilitation. Nor can it be said that probation is an inappropriate readjustment procedure.
Nearly ten years had elapsed since defendant's previous offenses and *938 the conditions revealed by the testimony indicated good prospects for defendant's future good behavior.
Additionally we would note that the nature of the circumstances surrounding this prosecution also mitigate against the propriety of incarceration. The State's Attorney disclaims any interest or purpose to utilize the criminal process for bill collecting and we have no reason to doubt the sincerity of his disclaimer. However the testimony of the bank officer is another matter. From his own testimony it appears that he was primarily concerned not only with recovering the amount of the forged check but recovering in behalf of the bank the added indebtedness of defendant to the bank represented by a personal loan. The bank official on cross examination testified as followed, "Q. When you talk about taking legal action and attempting to collect, are you referring to filing criminal complaints? A. Any type of legal action. Q. You don't differentiate between civil and criminal action? A. No, sir, not on a bad check, no sir."
We do not and can not condone forgery. Likewise we do not approve criminal proceedings instituted for the manifest purpose of collecting money. Where such is the state of facts we can only conclude that the seriousness of the offense is greatly mitigated and in the case at bar supports the conclusion that the sentence imposed or any incarceration is excessive. Contrariwise there is ample evidence supporting the conclusion that probation is an appropriate punishment.
During the pendency of this appeal defendant was released on bail fixed by this court after as we understand, having served approximately ninety days of his sentence. In accord with the foregoing reasoning the judgment of conviction of the circuit court of Rock Island County is affirmed but the sentence is vacated and the cause is remanded with directions that defendant be admitted to probation for a period of three years on the usual terms and conditions with the special condition providing for incarceration for the period which the defendant has already served it being deemed that such incarceration shall be considered to have satisfied such special condition.
Affirmed in part, reversed in part and remanded.
ALLOY, P.J., and SCOTT, J., concur.