THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HAROLD BROVERMAN, Defendant-Appellant.

(No. 70-96;

Fifth District—April 11, 1972.

Robert Broverman, of Taylorville, for appellant.

John H. Ward, State's Attorney, of Taylorville, (Brenda Sweeney, of counsel,) for the People.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

This is an appeal from the judgment of the trial court of Christian

County finding defendant-appellant, a practicing attorney in Taylorville, Illinois, guilty of the crimes of forgery and theft and sentencing him to one to three years in the penitentiary in one case and one to five in another, sentences to be served concurrently.

Defendant represented Mrs. Gertrude Metzger in a transaction in which she was to receive in settlement $3000, of which amount defendant was to receive one-third by prior agreement. A check payable to Mrs. Metzger in the amount of $2500 was delivered to defendant with no endorsements, and a $500 check was made payable to Mrs. Metzger to be delivered at a later date on the fulfillment of certain conditions. Within a few hours after receiving the $2500 check, defendant delivered it to a friend with two endorsements upon it; that of payee and his own. The friend then endorsed and cashed the check at a local bank and delivered the proceeds to the defendant. Mrs. Metzger testified that she did not endorse the check and never had the check in her possession. Upon her receiving the $500 check she became aware of the transaction and defendant's firm paid Mrs. Metzger $800. The court found defendant guilty of theft to the extent of $700.

In another case, defendant instructed his secretary to notarize a note for a loan and subsequently delivered the note to a credit union office bearing, in addition to his signature, the signatures of two sureties, both of such latter signatures being forgeries according to expert testimony.

Defendant seeks a reversal of the conviction on the grounds that the indictments were fatally defective, that the State failed to prove beyond a reasonable doubt any of the charges including venue, that defendant was prejudiced by a reference to his failure to testify, and that the trial court was too severe in its sentence.

■■ The indictments here meet the requirements of adequately apprising the defendant of the charges against him and are adequately descriptive and self-limiting to prevent defendant from again being placed in jeopardy for the same offenses. Omission of the word "knowingly" when the words "knowing said document to have been altered" and "with the intent" were included was not fatal. Similarly, the deletion of "delivered" from an indictment which originally charged the defendant with having "knowingly made, possessed, issued and delivered" a certain promissory note on which he had forged two signatures was in no way harmful to defendant. *People ex rel. Miller v. Pate,* 42 Ill.2d 283, 246 N.E.2d 225.

■■ After reviewing the record, we find that there was sufficient evidence to prove the defendant guilty of the crimes charged beyond all reasonable doubt.

■ At the worst, there could be inferred a criticism of the defendant

for not taking the witness stand in a remark by the prosecutor, but defendant's objection thereto was sustained, the State's Attorney explained and withdrew the objected to remarks, there was no jury, and the court clearly stated that it disregarded the remarks and any criticism of defendant in this aspect.

This leaves us the difficult question of whether probation should have been granted.

Following the rationale of *People v. McClendon*, 130 Ill.App.2d 852, 265 N.E.2d 207, we again emphasize that the primary objective in the administration of the criminal laws of this State is the safety and security of the community. Therefore all should be interested in pursuing that course of action which is most likely to accomplish that end. In pursuit of that objective, the legislature of our State has enacted legislation providing that a person convicted of any offense except a capital offense, the sale of narcotics, or rape, may be admitted to probation when it appears the defendant is not likely to commit another offense, the public interest does not require that the defendant receive the penalty provided for the offense and the rehabilitation of the defendant does not require that he or she receive the penalty provided by law for the offense. (Ill. Rev. Stat. 1967, ch. 38, par. 117—1.) Probation is more than a merciful act by the court in cases where there are mitigating circumstances; it is also an affirmative correctional tool used because it offers the most future protection to the public.

A thoughtful discussion of the reasoning behind probation is contained in the Introduction to the Standards Relating to Probation promulgated by the Advisory Committee of the American Bar Association on Sentencing and Review:

"The basic idea underlying a sentence to probate is very simple. Sentencing is in large part concerned with avoiding future crimes by helping the defendant learn to live productively in the community which he has offended against. Probation proceeds on the theory that the best way to pursue this goal is to orient the criminal sanction toward the community setting in those cases where it is compatible with the other objectives of sentencing. Other things being equal, the odds are that a given defendant will learn how to live successfully in the general community if he is dealt with in that community rather than shipped off to the artificial and atypical environment of an institution of confinement. Banishment from society, in a word, is not the way to integrate someone into society. Yet imprisonment involves just such banishment—albeit for a temporary sojourn in most cases.

\* \* \*

By the same token, however, it is to say that probation is a good

bit more than the 'matter of grace' or 'leniency' which characterizes the philosophy of the general public and of many judges and legislatures on the subject. Probation is an affirmative correctional tool, a tool which is used not because it is of maximum benefit to the defendant (though, of course, this is an important side product), but because it is of maximum benefit to the society which is sought to be served by the sentencing of criminals. The automatic response of many in the criminal justice system that imprisonment is the best sentence for crime unless particular reasons exist for 'mitigating' the sentence is not a sound starting point in the framing of criminal sanctions. The premise of this report is that quite the opposite ought to be the case—that the automatic response in a sentencing situation ought to be probation, unless particular aggravating factors emerged in the case at hand. At least if such aggravating factors cannot be advanced as the basis for a more repressive sentence, probation offers more hope than a sentence to prison that the defendant will not become part of the depressing cycle which makes the gates of our prisons resemble a revolving door rather than a barrier to crime."

The Standards Relating to Probation recommended by the Advisory Committee of the American Bar Association on Sentencing and Review, provide in part:

"1.2   Desirability of probation.

Probation is a desirable disposition in appropriate cases because:

(i) it maximizes the liberty of the individual while at the same time vindicating the authority of the law and effectively protecting the public from further violations of law;

(ii) it affirmatively promotes the rehabilitation of the offender by continuing normal community contacts;

(iii) it avoids the negative and frequently stultifying effects of confinement which often severely and unnecessarily complicate the reintegration of the offender into the community;

(iv) it greatly reduces the financial costs to the public treasury of an effective correctional system;

(v) it minimizes the impact of the conviction upon innocent dependents of the offender.

1.3   Criteria for granting probation.

(a) The probation decision should not turn upon generalizations about types of offenses or the existence of a prior criminal record, but should be rooted in the facts and circumstances of each case. The court should consider the nature and circumstances of the crime, the history and character of the offender, and available institutional and com-

munity resources. Probation should be the sentence unless the sentencing court finds that:

(i) confinement is necessary to protect the public from further criminal activity by the offender; or

(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined, or;

(iii) it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed.

(b) Whether the defendant pleads guilty, pleads not guilty, or intends to appeal is not relevant to the issue of whether probation is an appropriate sentence."

■■ Where the chances for rehabilitation are good, probation is a much more effective tool for the protection of the public from future crimes of the defendant than is a prison sentence in those cases where it is probable that the defendant is not likely to commit another crime; the public interest does not require incarceration and the rehabilitation of the defendant does not require incarceration. This is not to say that hardened and veteran criminals should not be removed from society for reasons of safety, but that probation is in order when the conditions of Chapter 28, Section 117—1 have been met.

Although probation involves a calculated risk each time that it is given, the statistics disclose that the risks to the public are much less in using probation as an affirmative correctional tool than in the system of automatic sentencing to prison in all cases. Probation proceeds on the simple formula that taking a man out of society is not the best way to teach him to live in society.

In this case, based on a study of the record and consideration of reasonably anticipated results, the risk to society in defendant being on probation rather than in confinement is slight because any risk to society from a repetition of his misconduct has been removed by his disbarment from the practice of law.

This defendant's conduct was not excusable, and it probably is not even understandable unless one considers his weakness for gambling. His losses resultant from this compulsion and not avarice caused his defalcations.

Weighed against this defect, we consider the testimony of numerous members of Mr. Broverman's community who requested the trial court to grant probation, attesting to the fact that the defendant's overall past conduct was such that he had earned the respect, loyalty and gratitude of many people.

We agree with the trial court's conclusion that the defendant's situa-

934

tion is such that it is highly improbable that he will commit any crimes in the future. Despite the fact that his misdeed may reflect on his profession, we do not agree that the public interest requires his incarceration. Creating examples is so likely to be unfair in the intensity of its punitive nature that we reject it in this instance. Further, we doubt that incarceration would contribute anything to Mr. Broverman's rehabilitation. We believe the interest of the community and of the defendant would have been served best had he been released under probationary supervision without incarceration. "Where incarceration is not required for rehabilitation or for the protection of society it serves no social utility in the future protection of society." *People v. Palmer,* 1 Ill.App.3d 492, 274 N.E.2d 658, 661.

For the foregoing reasons the judgment of the Circuit Court of Christian County is upheld in all respects as to defendant's guilt of the crimes of forgery and theft and reversed as to its denial of probation. The cause is remanded with directions to the Circuit Court of Christian County to vacate the order sentencing the defendant to the Illinois Department of Corrections and to grant him probation under such terms and conditions as the trial court shall fix.

Judgment affirmed in part, reversed in part, and remanded.

JONES and CREBS, JJ., concur.