518 P.2d 863

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Herman Ray CORNWALL, Defendant-Appellant.**

**No. 11335.**

Supreme Court of Idaho.

Jan. 23, 1974.

---

3. Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

R. M. Whittier, Pocatello, for defendant-appellant.

W. Anthony Park, Atty. Gen., Wayne Crookston, Asst. Atty. Gen., J. Dennis Williams, Deputy Atty. Gen., Boise, Kenneth F. Clarke, Bingham County Prosecutor, Blackfoot, for plaintiff-respondent.

DONALDSON, Justice.

Herman Ray Cornwall, appellant (defendant) entered a plea of guilty to the charge of statutory rape. I.C. § 18–6101. He was subsequently sentenced to a term in the state penitentiary not to exceed fifteen years. From the imposition of that sentence he prosecutes this appeal.

Stated briefly, the facts are as follows. On Friday, October 7, 1972, the defendant was drinking in his home in Pocatello in the company of his older brother Phillip Cornwall. The victim, who was thirteen years of age at the time of the offense, was in the home as an overnight guest of defendant's daughter. Defendant and his

brother had started drinking that afternoon shortly after work. During the course of the evening, they left the home to go to a local bar. They stayed at the bar until it closed and then returned home to drink some wine which defendant's brother had left there.

Upon returning home, they discovered that the victim and defendant's daughter had consumed the wine. The two men then persuaded the two girls to accompany them to Blackfoot where the brother, Phillip Cornwall, lived. The purpose of this trip was ostensibly to secure some beer which Phillip Cornwall had in his trailer. Upon arriving in Blackfoot, the two men went into the trailer while the two girls stayed in the car. After about ten minutes, defendant's daughter had need of the bathroom facilities so the two girls went into the trailer. The victim stayed in the living room with the two men while the defendant's daughter used the facilities in the bathroom. After some coaxing by the defendant, the victim accompanied him into the bedroom where the act of intercourse occurred. The defendant was not charged with accomplishing the act with force.

After the event, the four returned to Pocatello, arriving there about 7:30 a. m., Saturday, October 8. The victim reported the incident to her mother who in turn reported it to the police.

After the defendant plead guilty, the trial court ordered a presentence investigation. A hearing was held on March 26, 1973, prior to sentencing. At that time, the court had before it a presentence investigation report and a report from Dr. Janet Anderson, a psychologist who had tested defendant following his arrest. The presentence investigation report stated that defendant was of above normal intelligence, that he was not prone to violence, but that when exposed to alcohol his sense of moral values was diminished. The report stated that defendant was a fair risk for probation and recommended some punitive aspect in sentencing. The psychologist's report stated that defendant was

above average intelligence, that he was not psychotic or neurotic, but that he did have a serious drinking problem. The report recommended that defendant be granted probation but that the terms of the probation be longer and stricter than usual. In addition, the report recommended continued counseling and a need for treatment of defendant's excessive drinking habits.

At the hearing, defendant was afforded the opportunity to rebut the contents of the presentence investigation report and to present whatever evidence he wished on his own behalf. Although there was evidence to the contrary, his wife testified that he was a good husband and father and that she would be willing to cooperate with the authorities should probation be granted. The trial court then imposed the sentence from which defendant appeals.

Defendant's first assignment of error is that the trial court abused its discretion in failing to consider probation for the defendant. Idaho Code § 19-2601 (Supp. 1973) authorizes a trial court to commute a sentence, suspend execution of a sentence, or withhold sentence and grant probation in any case involving a conviction or guilty plea to a felony charge other than murder or treason. The statute provides that it is within the discretion of the trial court to grant one of these alternatives rather than confinement in the penitentiary.

While the decision to grant probation is left to the discretion of the trial court, certain procedural safeguards have been established to guide the court in arriving at its decision. If the trial court fails to meet those standards, it will have abused its discretion. Such an abuse of discretion is a proper subject for review by this Court. State v. Mitchell, 77 Idaho 115, 289 P.2d 315 (1955); State v. Ogata, 95 Idaho 309, 508 P.2d 141 (1973).

Before passing judgment, the trial court must grant an applicant for probation a hearing, if he desires one, at which time the applicant must be afforded the opportunity to present evidence which supports his version of the facts, which shows

that he is a proper subject for probation, and which rebuts any adverse evidence before the court. State v. Edelblute, 91 Idaho 469, 424 P.2d 739 (1967); State v. Freeman, 85 Idaho 339, 379 P.2d 632 (1963); State v. Gish, 89 Idaho 334, 404 P.2d 595 (1965). In addition, where the court has before it a presentence investigation report, the applicant must have a reasonable opportunity to examine the report and present evidence which rebuts or explains any of the report's contents. State v. Grady, 89 Idaho 204, 404 P.2d 347 (1965). The defendant in this case was presented this opportunity and does not assign as error the denial of such a hearing or the opportunity to examine the report or present evidence on his behalf.

■ Certain guidelines have also been established which delineate what the trial court must consider in reaching its decision of whether to grant probation. The trial court must consider the following in arriving at its decision: (1) all the facts and circumstances surrounding the offense of which the applicant is convicted; (2) whether the applicant is a first offender; (3) the previous actions and character of the applicant; (4) whether the applicant might reasonably be expected to be rehabilitated; (5) whether it reasonably appears that the applicant will abide by the terms of the probation, and; (6) the interests of society in being protected from possible future criminal conduct of the applicant. State v. Kauffman, 94 Idaho 20, 480 P.2d 614 (1971); State v. Mitchell, *supra*; State v. Gish, *supra*; State v. Ogata, *supra*.

Defendant argues that the trial court failed to consider the following factors when it imposed a prison term rather than grant probation. (1) Defendant has a history of problems with alcohol, he committed the offense while intoxicated, he pleaded guilty to the charge, and there was no violence used in the attack. (2) Defendant has no prior felony convictions. His prior record consists only of a driving while intoxicated conviction and a reckless driving conviction. (3) Defendant has been steadily employed for six and one half years

and his employer expressed a willingness to cooperate with the court. (4) The report of the psychologist recommended probation and the presentence investigation report stated that defendant was a fair probation risk but recommended some punitive aspect in the sentence. (5) Defendant expressed a willingness to conform to any probation program that might be established.

A review of the remarks made by the trial court before passing sentence shows clearly that the court did consider probation and did take those facts which it is required to under consideration in determining the proper sentence. Before imposing sentence upon defendant, the trial court stated:

"Now, generally, in crimes, the trial judge is told that he must consider, and very seriously consider—and perhaps one of the foremost things he must consider is whether or not the person before him can be rehabilitated. Now we don't find in you any measurable handicaps, mentally or physically. We find in you a man that understands that he has not been up to standard with his accomplishments and how he handles his life, and in fact those around him, and including the welfare of your own children and what you have allowed them to be subjected to.

"Now we have a system where the crimes, when they come before us either upon a conviction or a plea of guilty, the trial judge has, in the first instance, the duty to make certain determinations and findings. Should you go to the penitentiary, then the State Board of Pardons & Corrections has further duties in handling you, in making determinations.

"Now I don't know how, in dealing with a man who has done what you have done, I could ever make a finding of absolute certainty at this time that you would not again become involved in such a thing. I guess nobody knows that. We have to make our determination at this point. But, in light of what this

record shows, I don't find anything that convinces me that you are a good probation risk at the point. I have to bear in mind that while you come before me with no prior felony, that none has actually occurred. But I guess I have to accept a record that there is none, and that there have been no convictions.

\* \* \* \* \* \*

"Now, in my opinion, it would demean the crime which you have committed if I were not to impose a sentence upon you to the State Board of Corrections, which would virtually mean that you're going to the penitentiary. We soft pedal the so-called deterrent effect as being not important anymore. Whatever remnants remain there, it still is a fact, in my opinion, that you are not at this point, a good probation risk; that society, at this point, is entitled to some protection against you until such time as the Board of Corrections might feel that you are a good probation risk."

■ Admittedly, the remarks of the trial court concerning defendant's prior record are open to interpretation, but it cannot be said that they constitute a clear showing of abuse of discretion. The statement of the court, taken as a whole, shows that it did consider the circumstances surrounding the offense, the fact that defendant was a first offender, with no prior felony convictions, whether or not defendant was a good candidate for probation, and the interests of society in being protected from possible future criminal conduct by defendant. Having considered these factors, defendant cannot complain because the court determined that probation should not be granted.

■ The defendant has no right to probation. State v. Ogata, *supra*; State v. Kauffman, *supra*. The granting or withholding of probation rests entirely within the discretion of the trial court. State v. Ballard, 93 Idaho 355, 461 P.2d 250 (1969). If the exercise of that discretion is based upon reason rather than emotion, it will not be disturbed by this Court. State v.

Kauffman, *supra*. The statement of the trial court made before imposing sentence shows clearly that its decision was based on reason rather than emotion. There has been no showing that the trial court abused its discretion in refusing to grant appellant probation. Without such a showing this Court will not disturb the decision of the trial court.

■ Defendant's second assignment of error is that the trial court abused its discretion in that it sentenced the defendant to an excessive term in the state penitentiary where there was no aggravation present in the record. It is well established in this state that where there appears in the record no error which might have prejudiced the defendant, a sentence within the limits established by statute is not an abuse of discretion. As this Court stated in King v. State, 91 Idaho 97 at 98, 416 P.2d 44 at 45 (1960):

"This court has repeatedly held that the authority to fix the maximum sentence resides with the district judge, and that such sentence will not be disturbed by this court, in the absence of abuse of discretion, if the sentence imposed is within the statutory limits; State v. Gish, 89 Idaho 334, 404 P.2d 595 (1965); State v. Weise, 75 Idaho 404, 273 P. 2d 97 (1954); State v. Yockey, 57 Idaho 497, 66 P.2d 111 (1937); State v. Farnsworth, 51 Idaho 768, 10 P.2d 295 (1932); also, that a sentence fixed within the limits prescribed by statute will not ordinarily be considered as an abuse of discretion by the trial court. State v. Powell, 71 Idaho 131, 227 P.2d 582 (1951)."

Here defendant pleaded guilty to the charge of statutory rape. Idaho Code § 18–6104 declares that rape is punishable by imprisonment in the state prison for a term of not less than one year and it may be extended to life at the discretion of the district judge. Defendant was sentenced to a maximum sentence of fifteen years which is clearly within the statutory limits. While it is true that there was no aggrava-

tion in the form of force or violence present, certain factors were present which would justify the imposition of such a sentence. At the time of the attack, the victim was only thirteen years of age. She was a close friend of defendant's daughter, a guest in defendant's home, and was apparently well enough acquainted with defendant that she would have sufficient trust in him to accompany him to Blackfoot in the middle of the night. In addition, the defendant knew that the victim had been drinking wine that night and it appears that he supplied her with some of the wine and encouraged her to drink it.

■ Defendant's final assignment of error is that the trial court failed to consider alcoholism as an illness rather than a criminal propensity. There can be little doubt that alcoholism is a disease requiring treatment like any other disease. *See 2* Cecil and Loeb, A Textbook of Medicine, at 1625 (10th ed. 1959); Manfred S. Guttmacher and Henry Weihofen, Psychiatry and the Law, at 318–322 (1952 ed.); Jellinek, The Disease Concept of Alcoholism, at 41–44 (1960). However, defendant's contention that the status of being an alcoholic should absolve him of any liability for his acts is without merit. Idaho Code § 18–116 states in part: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition."

There have been several recent decisions concerning criminal liability of chronic alcoholics and drug addicts. In Driver v. Hinnant, 356 F.2d 761 (1966), the Fourth Circuit Court of Appeals held that a chronic alcoholic could not be convicted under a state statute punishing public intoxication. They did so on the grounds that it would be cruel and unusual punishment to punish a chronic alcoholic for being drunk in that his condition compelled him to drink. He was not drunk because of his own free will. A similar result was reached in Easter v. District of Columbia, 124 U.S.App.D.C. 33, 361 F.2d 50 (1966). In addition, the United States Supreme Court struck down on the same grounds a California statute making narcotics addiction a misdemeanor. Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). However, each of these cases was specifically limited to the situation wherein an alcoholic or drug addict is being punished merely for occupying that status. In each, the court was careful to point out that an alcoholic or drug addict will not escape liability for other criminal acts merely because of his status. Thus, the trial court was not prevented from imposing penal sanctions against the defendant merely because he was intoxicated at the time he committed the offense.

There appearing in the record no error or abuse of the trial court's discretion in imposing a prison term not to exceed fifteen years, that judgment is affirmed.

SHEPARD, C. J., concurs.

BAKES, J., concurs in the result.

McFADDEN, Justice (concurring in part and dissenting in part).

I concur in that portion of the opinion wherein the judgment of conviction is affirmed, but do not concur in that portion of the opinion wherein this Court holds that the sentence imposed was not excessive. Under the provisions of I.C. § 20–223, the defendant will be eligible for consideration for parole only after examination and recommendation of one or more psychiatrists. Under this statutory provision this defendant could be held for the full term of fifteen years if for some reason his examination by a psychiatrist is never accomplished.

Great strides have been made in the science of penology seeking early rehabilitation of inmates. A term of less than fifteen years would accomplish the same result, and would give impetus to the State Board of Correction for an early examination. It is my opinion that the case should be remanded for resentencing of this defendant.

BAKES, Justice (concurring specially):

If there were any indication that the state prison officials would not provide the defendant with the psychiatric examination required by I.C. § 20–223 so that he could not be considered for parole, I would be inclined to join in the dissent of Justice McFadden. However, we must presume that the correction officials will perform their duties and therefore this defendant will be eligible for parole in the regular course.

McQUADE, Justice (concurring in part and dissenting in part).

I agree with the majority that the district court has wide discretion in the imposition of a sentence, but this action should be remanded to the district court for resentencing. The district court has the discretion to impose "probation under such terms and conditions as it deems necessary and expedient * * *."[1] To properly exercise its discretion, the district court has an obligation to insist that a positive plan for rehabilitation of the defendant be presented in the presentence report. The district court can only exercise its sentencing discretion when it is apprised of all the facts and circumstances concerning the defendant which includes his opportunities for rehabilitation.

The duty of the district court to demand a positive rehabilitation plan from the probation office before imposing a sentence also arises out of our cases holding the district court must consider the following factors in considering a request for probation:

"1) All the facts and circumstances surrounding the offense of which the defendant is convicted; 2) whether the defendant is a first offender; 3) the previous actions and character of the defendant; 4) whether the defendant might reasonably be expected to be reha-

bilitated; and 5) whether it reasonably appears that the defendant will abide by the terms of the probation."[2]

In order to evaluate these factors, the district court must have a presentence report that contains a positive rehabilitation plan.

In this action the presentence report did not set forth a positive rehabilitation program for the appellant, and therefore the action must be remanded and the district court directed to demand a proper rehabilitation plan before resentencing the appellant. The remaining portion of this opinion will describe the type of positive rehabilitation plan that should be contained in a presentence report, and it will discuss the role of defense counsel in the formation and evaluation of presentence reports.

To begin a discussion of the requirements of a presentence report's recommendation for rehabilitation, the purpose of the presentence report must be defined. One of the best definitions is that,

"No single instrument in our hands so neatly typifies the modern correctional philosophy as does the presentence report. Its only reason for being is to depict the intimate dynamics of one particular individual offender and to enable the court to dispose of his case with a tailor-made plan that is corrective in intent, whereas without such knowledge the disposition can only be punitive."[3]

From the stated purpose of presentence reports, it is clear that the rehabilitation plan is the most important element in a presentence report because it provides the "tailor-made" plan for the court, and thus a presentence report is only as good as the rehabilitation plan.

To be at all useful to the district court, the rehabilitation recommendation must be a positive program for the defendant. It should recommend more than whether probation should or should not be granted, but

1. I.C. § 19–2601(2).

2. State v. Ogata, 95 Idaho 309, 508 P.2d 141, 145 (1973); see also: State v. Trowbridge, 516 P.2d 362 (Idaho 1973); State v. Kauffman, 94 Idaho 20, 480 P.2d 614 (1971);

State v. Mitchell, 77 Idaho 115, 289 P.2d 315 (1955).

3. Keve, The Professional Character of the Presentence Report, Probation and Parole, 81 (R. Carter & L. Wilkins eds. 1970).

rather it should set forth what steps need to be taken to prevent a reoccurrence of the defendant's criminal behavior.[4] In formulating a positive plan of rehabilitation, the presentence report should explain the weaknesses and strengths of the defendant, and it should explain how the rehabilitation program will rely on the defendant's strengths and correct his weaknesses.[5]

"Much more is needed in a presentence report than a mere recital of facts about such tangible items as employment, resources, address, type of residence, church affiliation, and so on. A newspaper reporter can pull together the bare facts in a person's history but a trained probation officer should be expected to develop much more on the subjective elements in the background of a defendant and assess their relative importance. If a report is to be helpful to a sentencing judge it should contain a careful analysis of the defendant's problems, needs and concerns; his attitudes and feelings about himself, his family, and those with whom he comes in daily contact; his sense of values; his outlook on life in general; his feelings and attitudes about many things including the offense in which he is involved." [6]

In addition to describing the social relationships of the individual, the role of those relationships in the rehabilitation plan should be explained.[7] A positive rehabilitation program must include more than statements that certain services would be helpful in dealing with the defendant's problems, but rather it must be a schedule of activities that are available. One limitation on the scope of probation plans is that they may not impose conditions that are impossible for the defendant to fulfill, i. e., total abstinence for an alcoholic.[8]

As an example of what it means to formulate a positive rehabilitation plan, general recommendations will be set forth followed by the detailed information that must be included to make a "tailor-made" plan for the defendant. This list of general proposals is not by any means a complete list of the programs that can be formulated in a positive rehabilitation program.

1. PARTICIPATION IN ALCOHOLICS ANONYMOUS OR OTHER ALCOHOLIC REHABILITATION PROGRAMS

A rehabilitation plan suggesting the use of alcoholic treatment programs must specifically describe the suggested program, establish whether the defendant would qualify for the program, determine whether he can attend the meetings and set specific dates for his attendance, and estimate the duration of treatment and its chances for success. If other members of the defendant's family or his friends contribute to his alcoholism by their own alcoholism, it should be determined whether they are willing to participate in the program. Finally, the recommendation must explain why the alcoholism program will deter future criminal conduct by the defendant.

2. PSYCHOLOGICAL COUNSELING AND/OR GROUP COUNSELING

The availability of psychological counseling and group counseling for the defendant and his willingness to participate in it must be established. The counselor or group session must be named and an appointment schedule set up for the defendant. The probation officer and the counselor or group leader should submit short statements explaining why they believe the

4. P. Keve, The Probation Officer Investigates 151 (1969).

5. Id., 153; Keve, supra, note 3 at 87.

6. L. Sharp, "Objectives of the Presentence Report," in Pilot Institute on Sentencing, 26 F.R.D. 231, 327–328 (1959); see also: L. Sharp, "The Presentence Report," Sentencing Institute—Fifth Circuit, 30 F.R.D. 185, 242 (1961).

7. Administrative Office of the United States Courts, the Presentence Report 3 (1965).

8. State v. Oyler, 92 Idaho 43, 436 P.2d 709 (1968).

counseling will assist the defendant, and estimate the chances of success. The duration of the recommended counseling must be calculated and a means for financing the counseling must be set forth.

## 3. EDUCATION

The specific educational goals of the defendant, whether academic or vocational, must be set forth and their relevancy to his criminal behavior must be explained. The possibility of waiver of tuition and housing costs at state institutions should be investigated as well as the availability of counseling services on the campuses. The acceptance of the defendant into the named institution must be established, the courses he will attend described, and the means of payment discussed.

## 4. FAMILY COUNSELING

The possibility of family counseling services for the defendant and his family, and their willingness to participate in them must be determined. A schedule of counseling sessions should be established. A letter from the counselor explaining why his services would be beneficial to the defendant should be included with the recommendation in addition to the presentence investigator's appraisal of the need and benefit to be derived from family counseling.

## 5. FINANCIAL COUNSELING

In addition to setting forth the financial resources of the defendant, the presentence investigator should determine whether financial counseling is needed by the defendant and the availability of financial counseling should be established. Financial counseling will often be included in family counseling. The defendant's willingness to participate in financial counseling must be set forth as well as a schedule of meetings with the financial counselor.

## 6. CHURCH RELATED OR OTHER VOLUNTARY PROGRAMS DESIGNED TO ASSIST PERSONS TO DEAL WITH THEIR PROBLEMS

The availability of all community based services must be investigated and the defendant should be informed of these programs. Many of these programs should be considered in the context of assisting the defendant by involving his whole family in the program. If it is determined that specific programs would be helpful to the defendant, then a description of the program and how it relates to the defendant's criminal behavior must be included in the presentence report. A letter from the leader of the program stating how it will assist the defendant should also be included in the report.

In summary, a positive rehabilitation program must be a step by step schedule for the defendant to pursue. It must specifically set forth the needed services which have been investigated to insure that they are available to the defendant. A mere listing of possible programs that the defendant should be urged to participate in is meaningless and gives the district court no real guidance in the imposition of the sentence. If the presentence report fails to set forth a positive rehabilitation program for the defendant, it fails to fulfill the very purpose of recommending a "tailor-made" plan of rehabilitation.

Even if the probation officer is unable to formulate a rehabilitation plan, he should prepare an exhaustive list of available community services to aid the court in sentencing.[9]

The district courts have an active role in the formulation of presentence reports. They should request that specific rehabilitation programs be investigated, and if a presentence report does not contain a positive program of rehabilitation, they should require it to be formulated. The importance of the presentence report should also be stressed to the defendant and his attorney, and they should be urged to coop-

9. P. Keve, *supra*, note 4, at 153.

erate with the probation officer preparing the report and encouraged to submit their own plans for rehabilitation.

The district court has continuing jurisdiction over a defendant while he is on probation and can modify the terms of the probation at any time.[10]  In accordance with this continuing jurisdiction, the district court should require the probation officer to submit periodic (at least quarterly) follow-up reports which review the progress of the defendant under the court imposed probation plan, and if necessary, the probation plan could then be modified. The follow-up reports would provide the district court with a means of evaluating the reliability of the rehabilitation programs.

The defense counsel must play an active role in the formulation of presentence reports.[11]  This role arises out of their overall duty to their client.

"This role extends to the gathering and evaluation of facts relevant to sentencing, and most important, to their presentation in court at the time of sentencing. Certainly in view of the shortage of competent lawyers to perform all the legal tasks in the criminal process, it would be unwise to rely exclusively on defense counsel to gather and evaluate sentencing facts. However, the ultimate responsibility for ensuring that facts are gathered and evaluated and for persuasively presenting them to the court rests with counsel." [12]

By gathering and evaluating the facts relevant to sentencing and the availability of community services, the defense attorney will often be submitting his own presentence report.  The submission of rehabilitation plans by defense attorneys will provide the courts with additional alternatives to choose from in the sentencing process.

The procedure of sentencing defendants to the prison system and not using probation rehabilitation programs has resulted in the following,

"After a century of 'prison reform,' our country has a penal system that is a dismal failure.  The American taxpayer has been deluded into believing that our penal system provides treatment and rehabilitation for criminal offenders while it protects the public by keeping offenders incarcerated.  During fiscal year 1971 alone, the American taxpayer spent $1.5 billion to keep 400,000 prisoners incarcerated in Federal, State, and local prison facilities.  And in return for their money the taxpayers are the victims of more and more felonies—80 percent of which are committed by former offenders.  A recent Federal Bureau of Investigation study shows that approximately two-thirds of all offenders released from prison are rearrested within 4 years—a nationwide recidivism rate of 66⅔ percent.  Since the recidivism rate is the rate at which former offenders commit new crimes, it seems that it would be the best barometer of the success or failure of a penal system." [13]

Through the development of more specific rehabilitation plans by the probation officer and the defense attorney, the district court will have a wider range of sentences to choose from to avoid the "dismal failure" of the prison system.

10. State v. Oyler, *supra*, note 8; I.C. § 20-221.

11. Dash, The Defense Lawyers Role at the Sentencing Stage of a Criminal Case, 54 F.R.D. 315 (1972); Feit, A Guide To Defense Counsel in the Exercise of His Post-conviction Responsibilities, 9 Crim.L.Bull. 149 (1973); The President's Commission on Law Enforcement and the Administration of Justice, Task Force Report: The Courts 19 (1967).

12. The President's Commission on Law Enforcement and the Administration of Justice, Task Force Report: The Courts 19 (1967).

13. House Select Committee on Crime, Reform of Our Correctional Systems, H.R.Rep. 93-329, 93rd Cong., 1st Sess. 47 (1973).