Joseph Arthur MATTINO, Petitioner,

v.

STATE of Tennessee, Respondent.

Court of Criminal Appeals of Tennessee.

March 23, 1976.

Certiorari Denied by Supreme Court
July 6, 1976.

George H. Carnall, II, Memphis, for petitioner.

R. A. Ashley, Jr., Atty. Gen., Robert A. Grunow, Asst. Atty. Gen., Nashville, James D. Wilson, Asst. Dist. Atty. Gen., Memphis, for respondent.

## OPINION

DAUGHTREY, Judge.

Joseph Arthur Mattino, a youthful first offender, was sentenced by the Shelby County Criminal Court to serve 11 months and 29 days in the Shelby County Penal Farm upon his plea of guilty to a charge of petit larceny. At the time the plea was entered, a hearing was held on the defendant's petition for suspension of sentence and admission to probation, and at the conclusion of the hearing the trial court denied suspension and probation. The defendant appeals this denial, asserting that the trial court erred in denying his petition. We agree, and consequently reverse the order and remand the cause with directions to the court below.

Two questions present themselves for resolution on this appeal:

(1) Whether the trial court's action in refusing to grant probation was an abuse of its discretion; and

(2) Whether there was a failure by the trial court to consider the probation report, constituting reversible error and requiring remand for reconsideration of the report.

The authority of the trial judge to suspend execution of sentence and place a criminal defendant on probation under conditions devised by the court is a statutory power of fairly recent origin in Tennessee, dating to Chapter 76 of the Acts of 1931. See T.C.A. §§ 40–2901 et seq. In determining whether to grant or deny probation, the trial court must exercise its discretion such that "its action will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State,* 201 Tenn. 156, 162, 297 S.W.2d 78, 81 (1956). Although the statute assigns the determination to the "sole discretion of the trial judge," T.C.A. § 40–2904, it is well-settled that this discretion is not absolute and must constitute the "exercise [of] a conscientious judgment, not an arbitrary action." *Hooper v. State, id.*

In its recent decision in *Stiller v. State,* 516 S.W.2d 617 (1974), the Tennessee Supreme Court has made explicit the right of both the State and the defendant to an appellate review of the trial court's probation determination. But the trial judge's decision denying probation may be overturned only if "capricious, arbitrary or pal-

pably abusive of his discretion." 516 S.W.2d at 620.

■ In addition, this court in a recent opinion has held that when denying suspension and probation the trial court must set out in the record its reasons for the denial. *Darryl Greer v. State,* Court of Criminal Appeals, Jackson, October 1975. Such a requirement is obviously necessary to give the appellate courts a basis upon which to provide a meaningful review, to determine whether the decision was indeed a conscientious judgment by the lower court or merely an arbitrary action.

In this case, at the conclusion of the hearing the trial judge made the following oral statement from the bench reflecting his reason for denying probation:

"Considering the testimony in this case and reading the letters of—on behalf of this defendant and hearing the statements of counsel and also considering the fact that this plea of guilty is on a reduced charge to that of petit larceny, it is the judgment of this Court that this petition should be denied."

The testimony at the hearing consisted of the prosecutor's statement of fact entered in the record as the basis for acceptance of the defendant's guilty plea, and the defendant's testimony offered in support of his petition for a suspended sentence. The facts developed by the testimony indicate that the defendant, a 20 year old native and resident of New York, along with two juveniles burglarized an unoccupied residence in Memphis, Tennessee. The trio removed food, blankets, a gold watch and a color television set (total value $680.00) and fled west from Memphis by car. They drove until too tired to continue, pulled off the highway to rest and were promptly arrested by Arkansas police officers. The defendant waived extradition and was returned to Memphis where he cooperated with investigators by giving a full signed confession. Subsequently property worth $673.00 was returned to the home owner.

The defendant is a first offender with no criminal record of any kind and, according to the prosecutor, no history of drug involvement. He comes from a broken home and had dropped out of high school after the tenth grade, apparently because he was forced to leave home and become self-supporting. At the time of the hearing he was employed as an auto mechanic in his hometown in New York, by someone for whom he had worked previously and who wanted to continue to employ the defendant during the period of his proposed probation.

The letters referred to by the trial court and preserved in the record include letters from the defendant's mother, several of his neighbors, his current employer and a former employer, and the director of probation services in New York who is personally acquainted with the defendant. While admittedly solicited by the defendant or his counsel, these letters can only be characterized as highly favorable to the defendant. Their tone ranges from warmly supportive to enthusiastic, with references to the defendant as "a good boy," "quiet and good natured," "never before in trouble," "helpful," "a very good worker," "trustworthy," "honest and forthright in his approach to his responsibilities," "a very reliable and considerate person." The New York probation director expresses surprise at the defendant's current difficulty with the law and concludes "I am certain that he has learned his lesson well."

The defendant had been indicted for first degree burglary, grand larceny, receiving and concealing, and upon his guilty plea to the lesser included offense of petit larceny, the prosecutor recommended a sentence of 11 months and 29 days. The prosecutor entered no opposition to the petition for probation, a neutral if not favorable factor to the defendant.

■ From these facts and circumstances it is apparent that the sole basis for the court's denial of probation was the nature of the offense and some unspoken feeling by the judge that the defendant had already been given his "one break" in being allowed to plead to a lesser offense. This conclusion is fairly deduced from the Court's own statement set out above. The

letters to which the judge refers are uniformly favorable and therefore do not support a denial of probation. The testimony was virtually all favorable to the defendant—with the exception of the facts surrounding the criminal conduct with which he was charged.[1]

Thus the essential question in this particular case is whether it is within the trial court's discretion to deny probation based solely on the nature of the offense or, concomitantly, on the circumstances of the defendant's conviction (here, upon a guilty plea to a lesser offense). A close reading of the *Stiller* decision compels us to find that the court's denial on such a narrow basis may indeed constitute an abuse of discretion requiring reversal of the court's order denying probation.

In *Stiller* the court reiterated the language of *Hooper* to the effect that probation is a matter of privilege and is not available to a criminal defendant as of right upon demand or upon a particular showing. 516 S.W.2d at 619. But the court went on to delineate what rights the defendant does have, i. e. "the right to petition the court for probation, the right to a full and fair evidentiary hearing and the right to all the procedural requirements contained in or necessarily contemplated by the statutory scheme." 516 S.W.2d at 619–20. Further the *Stiller* court characterizes probation as "a privilege to be conferred after a determination of the circumstances of the offense, the defendant's criminal record, his social history, his present condition and, where appropriate, his physical and mental condition . . . " 516 S.W.2d at 620. This language is that of the statutory provision in T.C.A. § 40–2904 requiring the use of probation reports where available to the trial court and governing the content of such reports. Thus it is the clear intent of the legislature that these several factors be considered by the trial court through use of the probation report. And we think that the *Stiller* opinion requires consideration of the same factors regardless of whether a report is available to the judge,[2] as part of the "full and fair evidentiary hearing" to which the petitioner is entitled:

> [The court below proceeded] upon the general basis that the "enormity of this defendant's crime" precluded the suspension of his sentences and placing him on probation. That this is a legitimate factor for the Court to consider is beyond question, but it is equally beyond question that *it is but one of a number of considerations by which the Court must be guided in determining whether to grant or withhold suspension and probation.* Other statutory considerations are the defendant's criminal record, social history, present condition and, in proper cases, his physical and mental condition (emphasis supplied). 516 S.W.2d at 621.

This is not to say that the nature or circumstances of an offense could never provide a sufficient basis for denial of probation. Crimes of violence against the person, or particularly heinous crimes might indeed be the controlling factor in a probation determination. But these crimes are likely to be perpetrated by persons whose backgrounds are largely dissimilar to the defendant's. In any case, plainly the crime

---

1. The State in its brief argues that the fact that the defendant had travelled around the country indicated he would be a poor subject for probation. The defendant had worked on his uncle's farm in Vermont for a year before moving to Florida to live with friends in an unsuccessful attempt to re-enter high school. His last move had been to a small town in Arizona, where he had worked at a construction job. These facts fail to demonstrate an uncontrollable wanderlust which would prevent successful rehabilitation by means of probation. If probation were granted, the defendant's movements would be strictly subject to the order of the trial court, T.C.A. § 40–2904, and his efforts to complete his education might well be greatly enhanced by the individual supervisory influence of his probation officer.

2. The trial judge in *Stiller* had granted probation and the order was appealed by the State. The Court of Criminal Appeals reversed the trial court, denying the defendant probation. The probation report had not been made a part of the technical record, and so the appellate court apparently based its decision on the nature and circumstances of the offenses involved. The Supreme Court reversed and reinstated probation.

charged here is not of such nature nor the circumstances of its commission such as to constitute a legal barrier to probation. And to deny probation because the defendant has already been granted a concession in pleading to a lesser offense is likewise unreasonable in light of prevalent plea bargaining practices, especially where, as here, the defendant is a youthful first offender. Plea reduction and other forms of bargaining are as much a matter of convenience to the prosecution as to the defense. *Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). To suggest, as does the court below, that their use should preclude subsequent probation can only frustrate both the effectiveness of plea bargaining for the prosecution and the possibility of rehabilitation of the defendant by supervised probation programs.

 We therefore hold that the trial judge abused his discretion in denying probation on the basis of the reason stated in the record. The record indicates that the trial court's determination *denying* probation was based on the nature of the offense and the fact of the plea reduction, all other factors mentioned by the judge clearly favoring the *granting* of probation to this defendant. If there were other negative factors tending to influence the trial court's judgment, they should have been entered on the record, either orally or in writing. In this case, the nature and particular circumstances of the offense alone will not support a denial of probation, given the trial court's failure to properly consider and give weight to the other factors mandated by *Stiller* and contemplated by the statute, i. e., the defendant's "criminal record, his social history and his present condition."[3]

Among other considerations missing from the trial court's stated reason for denying probation is any indication that the Tennessee and New York probation reports ordered pursuant to T.C.A. § 40–2904 were considered by the court in reaching its decision. The pertinent part of § 40–2904 provides:

The power of suspension and probation is within the sole discretion of the trial judge, however, when a probation and paroles officer is available to the court, no defendant shall be placed on probation until a written report of investigation by a probation and paroles officer shall have been presented to and considered by the court . . . Said report shall inquire into the circumstances of the offense, criminal record, social history, and present condition of the defendant. . .

The defendant asserts that the court's failure to evidence on the record its consideration of the report is reversible error under the statute.

 While the court's verbal order at the conclusion of the hearing fails to mention the existence of the reports or to indicate what weight if any was given by the trial judge to the recommendations contained in the reports, the transcript does show that the judge had been presented with the reports and was in the process of reading them as the hearing commenced. His signature appears on one of the reports over the handwritten notation "Petition denied." Thus the record indicates that the trial judge "considered" the report for purposes of the statute, and therefore we find no violation under T.C.A. § 40–2904.

However, we note in passing that the trial court's failure to give explicit weight to these reports does have an adverse effect on this court's view of the soundness of the

---

**3.** In arriving at this decision, we have been favorably impressed by the following guidelines adopted by the Idaho Supreme Court in *State v. Cornwall,* 95 Idaho 680, 518 P.2d 863, 866 (1974):

The trial court *must consider the following in arriving at its decision:* (1) all the facts and circumstances surrounding the offense of which the applicant is convicted; (2) whether the applicant is a first offender; (3) the previous actions and character of the applicant; (4) whether the applicant might reasonably be expected to be rehabilitated; (5) whether it reasonably appears that the applicant will abide by the terms of the probation, and; (6) the interests of society in being protected from possible future criminal conduct of the applicant (emphasis supplied).

trial judge's exercise of discretion. The reports in this case set out the defendant's background and current status, and contain information gathered by trained, objective investigators which is virtually wholly favorable to the defendant. One of the reporting investigators categorizes the defendant's criminal conduct as an "isolated offense." Both reports recommend probation.

▮ Thus the real question presented by this second issue is whether the trial court has the discretion to ignore the content and recommendations of these reports, given the mandate of *Stiller* and the thrust of the legislative intent embodied in T.C.A. §§ 40–2901 *et seq.* While not per se determinative of the issue, such action by the trial judge constitutes but one more factor tending to indicate that an abuse of discretion has occurred in this case.

Upon remand the trial judge may fashion and impose whatever conditions he "may deem fit and proper." T.C.A. § 40–2901. Under *Stiller* these conditions of probation "must be reasonable and realistic and must not be so stringent as to be harsh, oppressive or palpably unjust." 516 S.W.2d at 620. The scope and variety of techniques possible in planning for the defendant's rehabilitation are indicated in *State v. Cornwall,* supra fn. 3, 518 P.2d at 869–872 (McQuade, J., concurring in part and dissenting in part).

In *Stiller* the Tennessee Supreme Court lauded probation as a desirable alternative to the indiscriminate "warehousing" of criminals. That probation is many times less costly than incarceration has been amply demonstrated. *See* Standards Relating to Probation promulgated by the Advisory Committee on Sentencing and Review of the American Bar Association, at 29–30 (Approved Draft, 1970), estimating the cost of probation at one-tenth that of incarceration. Studies indicate that probation as a correctional technique enjoys a statistically high rate of success. *See, e. g., People v. McClendon,* 130 Ill.App.2d 852, 265 N.E.2d 207, 210 (1970). Such statistics have convinced most professionals in the field, as

expressed in the Introduction to the American Bar Association Standards, *supra,* that:

. . . probation is a good bit more than the 'matter of grace' or 'leniency' which characterizes the philosophy of the general public and of many judges and legislatures on the subject. Probation is an affirmative correctional tool, a tool which is used not because it is of maximum benefit to the defendant (though, of course, this is an important side product), but because it is of maximum benefit to the society which is sought to be served by the sentencing of defendants.

\* \* \* \* \* \*

The basic idea underlying a sentence to probation is very simple. Sentencing is in large part concerned with avoiding future crimes by helping the defendant learn to live productively in the community which he has offended against. Probation proceeds on the theory that the best way to pursue this goal is to orient the criminal sanction toward the community setting in those cases where it is compatible with the other objectives of sentencing. Other things being equal, the odds are that a given defendant will learn how to live successfully in the general community if he is dealt with in that community rather than shipped off to the artificial and atypical environment of an institution of confinement.

▮ It is not the function of an appellate court to "second-guess" a trial court in the exercise of its discretion. Nevertheless, the appellate courts must guard against abuse of discretion by the trial judge, and we think the failure to invoke the "affirmative correctional tool" of probation under all the facts and circumstances of this case was an abuse. Accordingly we reverse the trial court's order denying suspension and probation and remand this cause for further orders not inconsistent with this opinion.

WALKER, P. J., dissents.

GALBREATH, J., concurs.

WALKER, Presiding Judge (dissenting).

I must dissent.

I agree that probation is one of the great advances in the administration of criminal justice, but, in my view, the trial judge in this case did not abuse his discretion under the rules laid down in *Stiller v. State.* In addition I do not find that *Stiller* or the statutes require a trial judge to set out in writing his reasons for denying or granting probation. Ordinarily this is not required in discretionary matters. I cannot say that the action of the trial judge here was capricious, arbitrary or palpably abusive of his discretion. An appellant claiming an abuse of discretion has the burden of proving that contention. I do not think he has sustained that burden.

I would affirm the trial judge's denial of probation.