**Lee Artis MOTEN, Petitioner,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

Dec. 12, 1977.

A. Kemp Stallings, Asst. Public Defender, Memphis, for petitioner.

Brooks McLemore, Jr., Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Richard McNeese, Asst. Atty. Gen., Memphis, for respondent.

## OPINION

HENRY, Justice.

The sole question before the Court is whether the trial judge abused his discretion in denying petitioner's application for a suspended sentence and the Court of Criminal Appeals erred in affirming the action of the Trial Judge.

Petitioner was indicted for grand larceny and receiving and concealing stolen property. He entered a plea of guilty to a reduced charge of petit larceny and received a workhouse sentence of nine months. He filed his petition for probation and the trial judge conducted a full evidentiary hearing.

The trial judge predicated his action in denying probation upon three factors, *viz.:*

a. the manner in which this matter occurred and the amount involved;

b. the deterrent effect of denial;

c. the reduction of the charge to petit larceny.

The Court of Criminal Appeals deemed these reasons to be sufficient and held that there was "no indication of arbitrary action on the part of the trial judge" and that he did not abuse his discretion. We disagree.

## I.

Petitioner, at the time of the commission of the underlying offense, had been employed by William R. Moore, Inc. (Moore), of Memphis for approximately two years in its carpet department. He was approached by a co-worker (later a co-defendant) in a scheme to ship carpeting out under a fictitious or "dummy" bill of lading. Initially he did not agree to enter into this plot but after thinking it over for two or three days and after being offered $300.00 for his co-operation and participation he agreed. The result was that carpeting having an approximate value of $3,000.00 was taken wrongfully from the warehouse.

All the stolen merchandise was later recovered and there was no violence in connection with the taking. After the investigation focused upon him, he voluntarily surrendered to the authorities and made a full confession.

Petitioner's background and social history are excellent—perhaps even outstanding. He served honorably on active duty with the United States Marine Corps and is currently an active member of its reserve. During his two-year employment with Moore he encountered no problems and his work was satisfactory.

His probation report which appears in the transcript shows that he has no criminal record and no alcoholic or drug involvement.

He was approximately twenty-two years of age at the time of the commission of the offense—perhaps nearer to his twenty-third birthday. He is married and has two children. He owns his own home, upon which he makes regular payments.

Since leaving the employ of Moore, he has not had regular employment. He is supporting his family on educational benefits received through the Veterans Administration for night-time studies and from his drill pay as a member of the Marine Corps Reserve.

After his confession, according to the probation report and to witnesses, he suffered emotionally and showed substantial remorse over his conduct. He went to his employer and apologized. The probation report and the testimony of witnesses conclusively establish his honest desire to reform and rehabilitate himself. The record shows him to be an exemplary husband and father with a stable home life. The parole report shows a stable environment and background.

His attitude was such that the Assistant Attorney General who appeared in opposition to his probation commented that he was "impressed with Mr. Moten's attitude."

There is not one scintilla of a suggestion in the probation report, the testimony, the exhibits, or elsewhere in the record of anything in his background or of any circumstance or condition that is unfavorable. He appears in this record as an ideal candidate for clemency. Denial of his petition for probation must be founded upon matters not in the record, or must rest upon a philosophical antipathy toward probation, or upon a misapplication of the policy considerations governing probation.

## II.

■ The public policy of Tennessee favors probation in proper cases. The legislature has given statutory sanction and has provided guidelines. Section 40–2901, T.C.A., contains specific authorization for trial judges "to suspend the execution of sentence and place the defendant or defendants on probation, subject to such conditions as the trial judge may deem fit and proper."

Sec. 40–2904, T.C.A., specifies the criteria for the Court's consideration by requiring that the probation report "shall inquire into the circumstances of the offense, criminal record, social history, and present condition of the defendant."

In our recent case of *Stiller v. State,* 516 S.W.2d 617 (Tenn.1974), we further amplified this public policy by recognizing that:

The entire theory of probation is that it is in the public interest that those who violate society's rules of conduct should, in proper cases, be given an opportunity to

rehabilitate themselves and to be restored to useful and productive citizenship. More and more our society is coming to realize that "warehousing" criminals on an indiscriminate basis is financially, socially and morally unacceptable.

However, this concept contemplates that probation be restricted to those who are worthy of this largesse of the law. 516 S.W.2d 620.

In *Stiller* we reiterated the statutory criteria.

Following *Stiller* the Court of Criminal Appeals in *Mattino v. State*, 539 S.W.2d 824 (Tenn.Cr.App.1976), further amplified our state's public policy as follows:

In *Stiller* the Tennessee Supreme Court lauded probation as a desirable alternative to the indiscriminate "warehousing" of criminals. That probation is many times less costly than incarceration has been amply demonstrated. *See* Standards Relating to Probation promulgated by the Advisory Committee on Sentencing and Review of the American Bar Association, at 29–30 (Approved Draft, 1970), estimating the cost of probation at one-tenth that of incarceration. Studies indicate that probation as a correctional technique enjoys a statistically high rate of success. *See, e. g., People v. McClendon*, 130 Ill.App.2d 852, 265 N.E.2d 207, 210 (1970). Such statistics have convinced most professionals in the field, as expressed in the Introduction to the American Bar Association Standards, *supra*, that:

. . . probation is a good bit more than the 'matter of grace' or 'leniency' which characterizes the philosophy of the general public and of many judges and legislatures on the subject. Probation is an affirmative correctional tool, a tool which is used not because it is of maximum benefit to the defendant (though, of course, this is an important side product), but because it is of maximum benefit to the society which is sought to be served by the sentencing of defendants.

\*    \*    \*    \*    \*    \*

The basic idea underlying a sentence to probation is very simple. Sentencing is in large part concerned with avoiding future crimes by helping the defendant learn to live productively in the community which he has offended against. Probation proceeds on the theory that the best way to pursue this goal is to orient the criminal sanction toward the community setting in those cases where it is compatible with the other objectives of sentencing. Other things being equal, the odds are that a given defendant will learn how to live successfully in the general community if he is dealt with in that community rather than shipped off to the artificial and atypical environment of an institution of confinement. 539 S.W.2d 830.

### III.

We apply the statutory—*Stiller*—*Mattino* standards to the undisputed facts in this case.

a. *The circumstances of the offense.*

■ A twenty-two year old man was bribed to participate in a $3,000.00 theft. There was no violence and no aggravating circumstance.

b. Criminal Record
None

c. Social History
Excellent

d. Present Condition
Excellent

e. Physical and Mental Health
Nothing of significance

When we subject the action of the trial judge to the litmus test of *Stiller* and the statute, there would appear to be no legitimate justification for a denial of probation. We look to the reasons assigned by the trial judge.

a. *The manner in which this matter occurred and the amount involved.*

As we have already pointed out there was no violence and the amount involved was

not enormous and all was recovered. As the Court of Criminals correctly held in *Mattino:*

> This is not to say that the nature or circumstances of an offense could never provide a sufficient basis for denial of probation. Crimes of violence against the person, or particularly heinous crimes might indeed be the controlling factor in a probation determination. But these crimes are likely to be perpetrated by persons whose backgrounds are largely dissimilar to the defendant's. In any case, plainly the crime charged here [petit larceny in *Mattino* and here] is not of such nature nor the circumstances of its commission such as to constitute a legal barrier to probation. 539 S.W.2d 828–829.

The circumstances of the crime were not grossly negative. The young petitioner was verbally enticed, then bribed to commit the offense, wrestled with the decision and finally decided to go along. No physical violence resulted, no firearm was used and the stolen property was recovered.

#### b. *The deterrent effect of denial.*

Deterence is not a statutory factor.

Deterrence is not a *Stiller* criterion.

■ Reliance upon this factor would defeat the whole concept of probation. While the other factors listed in *Stiller* may or may not be present or applicable or significant in any given case, deterence is a factor which is uniformly present. Thus, even if all factors gravitate in defendant's favor in a given case, probation would be defeated by the fact that to suspend the sentence would destroy the conviction's deterrent value. Reliance on this factor is no more realistic or reasonable than denying probation on grounds that the defendant committed a crime. In fact, the trial judge virtually took that position by stating as one of his reasons for denying suspension to be that he thought the defendant should pay for his crime. This approach by the trial court places retribution above rehabilitation without reason.

#### c. *The reduction of the charge to petit larceny*

■ Again we turn to *Mattino* wherein this factor was found to be an improper basis for denial of probation:

> And to deny probation because the defendant has already been granted a concession in pleading to a lesser offense is likewise unreasonable in light of prevalent plea bargaining practices, especially where, as here, the defendant is a youthful first offender. Plea reduction and other forms of bargaining are as much a matter of convenience to the prosecution as to the defense. *Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). To suggest, as does the court below, that their use should preclude subsequent probation can only frustrate both the effectiveness of plea bargaining for the prosecution and the possibility of rehabilitation of the defendant by supervised probation programs. 539 S.W.2d 829.

#### IV.

It is not the policy or purpose of this Court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers. However, ours is the task of affording a meaningful review; and where the effect of sustaining the denial of a probation would be to defeat the public policy of the state by placing it within the power of a trial judge to deny probation on a basis outside statutory criteria, and without valid reasons, we are left with no choice but to intervene and act in furtherance of the legislative intent embraced in the statutes relating to probation.

We respectfully reverse the decisions of the Trial Judge and the Court of Criminal Appeals and remand to the Trial Court for the entry of an order of probation to include "such conditions of probation as the trial judge shall deem fit and proper." Sec. 40–2902, T.C.A.; *Stiller v. State, supra.*

Reversed and remanded.

FONES and BROCK, JJ., concurring.

COOPER and HARBISON, JJ., dissenting.

HARBISON, Justice, dissenting.

I respectfully dissent. I am unable to agree with the conclusion expressed in the majority opinion that the trial judge abused his discretion in the present case.

Whether probation should or should not be granted to a particular criminal offender is conceded by the majority opinion to be a matter of such great discretion with the trial judge that reversal is warranted only upon a finding of an abuse of that authority and not upon the preponderance of the evidence.

The offender in the present case pled guilty to the larceny of property from his employer. Because of the value of the property, he could easily have been convicted of grand larceny and could have received a much more severe sentence. Considerable leniency was shown by the prosecuting authorities and by the trial judge in the approval of a workhouse sentence of only nine months.

If the petitioner showed remorse for his misconduct, it was made known after he was apprehended, and not during the several months which intervened between the theft and his arrest.

While certainly the written record, as presented on appeal, would justify the conclusion that the petitioner is a proper subject for clemency, an experienced trial judge who saw and heard the petitioner and his witnesses was of a different opinion.

The majority opinion relies heavily upon the recent decision in *Stiller v. State,* 516 S.W.2d 617 (Tenn.1974), but it must be remembered that in that case the trial judge had granted probation. The record on appeal was found to be incomplete, and the holding of this Court was that the judgment of the trial court should be reinstated.

I am not able to agree with the conclusion expressed in the majority opinion that deterrence is not a factor, either explicit or implicit, which should enter into the thinking of a trial judge in denial of probation. It seems to be a major theme of critics of our present system of criminal justice that punishment is too indefinite and too uncertain under present rules, and that swift, sure and fixed punishment is one of the better means of attempting to curb criminal activity. It seems to me to be legitimate for a trial judge to consider whether the serving of some or all of a sentence would deter the offender from engaging in further criminal activity, and apparently the trial judge so concluded in the present case.

As pointed out by the Court of Criminal Appeals in its opinion in this case, it can hardly be contended that every criminal is entitled to a first offense without serving time. Of necessity, great weight should be given to the conclusions of the trial judges who, primarily, must administer the granting or denial of suspended sentences in this state. In the present case both the trial judge and a unanimous Court of Criminal Appeals have concurred in the denial of probation, and I am unable to conclude that the trial judge so abused his discretion as to warrant reversal by this Court.

I am authorized to state that Chief Justice COOPER joins in this opinion.