IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1999 SESSION

FILED

July 1, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9801-CC-00009 |
| Appellee, | * | BLOUNT COUNTY |
| VS. | * | Hon. D. Kelly Thomas, Jr., Judge |
| KENNETH MOATS, | * | (Voluntary Manslaughter; Reckless Endangerment) |
| Appellant. | * | |

For Appellant:

George H. Waters
Independent Contractor
419 High Street
Maryville, TN 37804

For Appellee:

John Knox Walkup
Attorney General & Reporter

Todd R. Kelley
Assistant Attorney General
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

Charles Carpenter
Assistant District Attorney General
363 Court Street
Maryville, TN 37804

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

# OPINION

The defendant, Kenneth Moats, pled guilty to the voluntary manslaughter of his son, Gene Moats, and the Class E felony reckless endangerment of his granddaughter, Michelle Gribble. The state approved a plea agreement which provided for concurrent three-year and one-year sentences respectively with the trial court to determine the manner of service. After an extensive sentencing hearing, the trial court ruled that the three-year sentence would be suspended after service of ten months in the Blount County Jail. Immediate probation was granted on the one-year sentence. The sole issue on appeal is whether the trial court erred by refusing to grant immediate probation on the three-year term.

We affirm the judgment of the trial court.

On March 3, 1997, the defendant was at his home on 4013 Payne Hollow Road in Walland, Tennessee. The victim, Gene Moats, lived next door in a trailer with his sister, Teresa Moats Gribble, and her daughter, Michelle Gribble. The defendant was eating dinner when his daughter, Ms. Gribble, telephoned to warn that the victim "has gone psychotic and is coming to kill you and Momma." When the defendant stepped onto his porch, he saw the victim armed with a handgun approaching the defendant's house. The victim continued advancing toward the residence, despite the defendant's warning to stop. When the victim was about seventy to eighty feet from his parents' home, he aimed his weapon at the defendant. The defendant responded by firing a single shot from his sixteen gauge shotgun, killing the victim. The defendant's granddaughter, Michelle Gribble, was in the line of fire but was uninjured.

Authorities found a functional .38 caliber pistol loaded with five rounds of live ammunition next to the victim's body. The defendant remained at the scene of the shooting and cooperated with the police. An autopsy report showed that the victim had a blood alcohol content of .17. The defendant had a blood alcohol content of .10.

Teresa Moats Gribble, the defendant's daughter, testified that she has not had any contact with her father since the shooting. She claimed that after the shooting, her father threatened her life. She also related that her daughter, who was the victim of the reckless endangerment, has sought psychological counseling and, as a result of the incident, has not done as well in school since the shooting. Ms. Gribble, who admitted telephoning her father on the night of the shooting, recalled that her father and her brother had a long history of hostility. She insisted, however, she did not phone her father to offer any type of warning and contended that the defendant had simply decided that "he was going to put an end to" the situation. Ms. Gribble specifically recalled an instance where the victim had fired a weapon inside her trailer after having an argument with the defendant.

Mary Crystal Moats, the defendant's wife of thirty-four years, testified that after the victim (her son) left the army in the 1980's, he began to abuse alcohol and drugs. The Moats' relationship with the victim deteriorated. During the ten years the victim lived with his parents, Ms. Moats was required to call the authorities on several occasions because the victim had pulled a gun on her or the defendant.

Ms. Moats recalled that the defendant had worked for TVA as a crane operator for several years before a disabling car accident. After the accident, he started his own painting business. She recalled that on the day of the shooting,

their daughter had called warning that the victim intended to kill them. Ms. Moats testified that she was calling 911 when she heard the gun go off. She stated that her husband expressed regret every day since the shooting.

Gary Spence, a longtime friend to the defendant, recalled that he was at the defendant's home one night when he observed an altercation between the defendant and the victim. He remembered that each had aimed a gun at the other; but then the defendant stated he did not want to "kill his own son," lowered the weapon, and retreated. Spence also recalled that he had seen Teresa Gribble provide the victim Valium.

The defendant testified that his relationship with his son deteriorated after his son left the military. He acknowledged that he argued with his son often and recalled previous occasions where his son aimed a weapon at him. The defendant recalled that on the day of the incident, his daughter had called, warning that the victim intended to kill him and his wife. The defendant stated that he picked up his shotgun and went to the front porch. He testified that when he saw the victim aim his weapon, he fired a single shot: "when I [came] down that step, evidently when that foot rolled, I touched that trigger ... I don't know how I [pulled that trigger] when I made that step." He claimed that he was unaware of his granddaughter's presence in the area.

The defendant admitted that while he was in jail awaiting his release on bail, he "smoked part of a joint." He also acknowledge that he smoked marijuana "every now and then." The presentence report also indicates that a drug test conducted on the defendant after his release was positive for the presence of marijuana. The defendant expressed regret over the death of his son, "if I could do

4

it over, it'd be me." The transcript indicates the defendant was overcome with emotion during portions of his testimony.

The presentence report establishes that in the early 1970's, the defendant was convicted of public intoxication, carrying a weapon, and DUI. The defendant, who is in his mid-fifties, worked from the 1960's through the mid-1990's as a crane operator for various companies. He was unable to continue that type of work after a car wreck. While the defendant drinks alcohol, he does not consider himself a problem drinker. He admitted to using marijuana "on and off" since 1975.

The trial court made the following ruling:

This is a tragic situation. ... Mr. Moats expresses extreme remorse and I'm sure sincerely feels as badly as he says he does. ... I think that the seriousness of this offense involving both of these victims demands some confinement. ... Rehabilitation is ... getting a person to the point where they will follow the law and not violate the law or violate the orders of courts. And I can't think of very many things that show or reflect more poorly on a person's likelihood of being rehabilitated than buying marijuana in jail and buying it after you're out of jail on a $25,000 bond and have been ordered by a judge not to drink. ... [T]hat's a very primary consideration in my decision. ... I'm going to order a split confinement of ten months in the jail, the balance to be served on supervised probation.

When a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). See State v. Ashby, 823 S.W.2d 166 (Tenn. 1991). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210.

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are, of course, presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(b). Among the factors applicable to probation consideration are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285 (Tenn. 1978).

A sentence of split confinement involves the grant of probation after the partial service of a sentence. Tenn. Code Ann. § 40-35-306. It may include a jail or workhouse sentence of up to one year with the probationary term to extend for any period thereafter up to the statutory maximum for the offense. Id.

The complaint in this case is that the trial court erred by failing to grant immediate probation. We cannot agree. That the defendant used marijuana while in jail and then out on bail suggests that he is less than an ideal candidate for rehabilitation. While remorseful about his son's death, he failed to take full

6

responsibility for the shooting, contending that the gun discharged accidentally. In our view, the trial court's ruling is supported by the record.

In <u>Ashby</u>, our supreme court encouraged the grant of considerable discretionary authority to our trial courts in matters such as these. 823 S.W.2d at 171. <u>See</u> <u>State v. Moss</u>, 727 S.W.2d 229, 235 (Tenn.1986). "[E]ach case must be bottomed upon its own facts." <u>State v. Taylor</u>, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). "'It is not the policy or purpose of this court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers.'" <u>Ashby</u>, 823 S.W.2d at 171 (quoting <u>Moten v. State</u>, 559 S.W.2d 770, 773 (Tenn. 1977)).

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:

_____
Norma McGee Ogle, Judge

_____
John K. Byers, Senior Judge