THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* IRMA JEAN McCLENDON, Defendant-Appellant.

(No. 69-88; )

Fifth District—December 1, 1970.

Morton Zwick, Director, Illinois Defender Project, of Chicago, (Ralph Ruebner, Assistant District Defender, of Elgin, of counsel,) for appellant.

Robert H. Rice, State's Attorney, of Belleville, (William R. Poston, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUDGE MORAN delivered the opinion of the court:

Defendant appeals from an order of the trial court denying her application for probation after she pleaded guilty to the charge of theft of property of $750.00 in value in violation of Chapter 38, Sec. 13—1(b) of the Illinois Revised Statutes.

The defendant became employed as a case worker for the Illinois Department of Public Aid in June of 1967 at a salary of $550.00 per month and was involved in two separate methods of defrauding the State during the period of January 21, 1968 and September 9, 1968. One method was to use her position as a case worker to make application for checks to be issued to a public aid recipient on the pretense that the recipient was in need of additional funds for emergency purposes. She would then notify the recipient to whom the checks were issued that the checks had mistakenly been issued and were for someone by the same name. The recipient cashed the check and gave her the money. She did this on twenty-four separate occasions. Another method she used was to obtain disbursing orders for additional money for food and clothing for public

aid recipients. Twenty such disbursing orders issued at her request were not used by the person to whom they were supposedly issued.

The evidence disclosed that she was 29 years of age and resided in the City of East St. Louis, Illinois. She was married in 1960 and divorced in 1965. She is the mother of and the sole support of three minor daughters, age 10, 9 and 7. She attended Southern Illinois University at Edwardsville, Illinois, and graduated from the Belleville Junior College Department of Nursing. At the time of the hearing she was employed at St. Mary's Hospital as a registered staff nurse at a salary of $600.00 per month. She had no prior arrests or convictions.

The Probation Office in its report to the court stated:

"During our interview with defendant she was very remorseful for the defalcations that she brought about as a member of the staff of the Public Aid Case Workers. She admitted all of the thefts and stated that they were not engineered by anyone other than herself. During Mrs. Drummond's interview with defendant, she readily agreed to make restitution to the State of Illinois for the amount of money absconded. Defendant seems to be above average in intelligence and through her life time has given much time to further her education and presently is working in the nursing profession, and is making an adequate salary. However, she has had an unhappy marital venture and is burdened with the support of her three children. The father paying no support money for the children whatsoever.

We, of the probation department, feel that defendant is truly repentant and sincere in her plea to be given another chance and to make restitution. Should the court be so inclined as to grant defendant probation, we would be glad to work out a time payment plan on a monthly basis to enable her to remain in society where she can raise and care for her three daughters in their own home and not become a burden on society. As this is defendant's first offense of any type, we feel she is a fit subject for probation."

At the completion of the probation hearing the trial judge stated that there were no mitigating circumstances; denied appellant's application for probation and sentenced her to a term of not less than three or more than ten years in the penitentiary.

■■ The primary objective in the administration of the criminal laws of this state is the safety and security of the community. Therefore, all should be interested in pursuing that course of action which is most likely to accomplish that end. In pursuit of that objective, the legislature of our State has enacted legislation providing that a person convicted of any offense except a capital offense, the sale of narcotics or rape may be

admitted to probation when it appears the defendant is not likely to commit another offense, the public interest does not require that the defendant receive the penalty provided for the offense and the rehabilitation of the defendant does not require that he or she receive the penalty provided by law for the offense. (Ill. Rev. Stat. 1967, ch. 38, par. 117—1.) Probation is more than a merciful act by the court in cases where there are mitigating circumstances; it is also an affirmative correctional tool used because it offers the most future protection to the public.

■■ Probation has been described as an authorized mode of mild and ambulatory punishment intended as a reforming discipline; and whether or not sentence is imposed in the granting of probation, the liberty of one judicially determined to have committed an offense is abridged in the public interest. *Toyosaburo Korematsu v. United States,* 319 U.S. 432; *People v. Nordstrom,* 73 Ill.App.2d 168; *People v. Smice,* 79 Ill.App. 2d 348.

A thoughtful discussion of the reasoning behind probation is contained in the Introduction to the Standards Relating to Probation promulgated by the Advisory Committee of the American Bar Association on Sentencing and Review:

"The basic idea underlying a sentence to probation is very simple. Sentencing is in large part concerned with avoiding future crimes by helping the defendant learn to live productively in the community which he has offended against. Probation proceeds on the theory that the best way to pursue this goal is to orient the criminal sanction toward the community setting in those cases where it is compatible with the other objective of sentencing. Other things being equal, the odds are that a given defendant will learn how to live successfully in the general community if he is dealt with in that community rather than shipped off to the artificial and atypical environment of an institution of confinement. Banishment from society, in a word, is not the way to integrate someone into society. Yet imprisonment involves just such banishment—albeit for a temporary sojourn in most cases.

\* \* \*

By the same token, however, it is to say that probation is a good bit more than the 'matter of grace' or 'leniency' which characterizes the philosophy of the general public and of many judges and legislatures on the subject. Probation is an affirmative correctional tool, a tool which is used not because it is of maximum benefit to the defendant (though, of course, this is an important side product), but because it is of maximum benefit to the society which is sought to be served by the sentencing of criminals. The automatic response of many in the

criminal justice system that imprisonment is the best sentence for crime unless particular reasons exist for 'mitigating' the sentence is not a sound starting point in the framing of criminal sanctions. The premise of this report is that quite the opposite ought to be the case—that the automatic response in a sentencing situation ought to be probation, unless particular aggravating factors emerge in the case at hand. At least if such aggravating factors cannot be advanced as the basis for a more repressive sentence, probation offers more hope than a sentence to prison that the defendant will not become part of the depressing cycle which makes the gates of our prisons resemble a revolving door rather than a barrier to crime."

The Standards Relating to Probation recommended by the Advisory Committee of the American Bar Association on Sentencing and Review, provide in part:

"1.2 Desirability of probation.

Probation is a desirable disposition in appropriate cases because:

(i) it maximizes the liberty of the individual while at the same time vindicating the authority of the law and effectively protecting the public from further violations of law;

(ii) it affirmatively promotes the rehabilitation of the offender by continuing normal community contacts;

(iii) it avoids the negative and frequently stultifying effects of confinement which often severely and unnecessarily complicate the reintegration of the offender into the community;

(iv) it greatly reduces the financial costs to the public treasury of an effective correctional system;

(v) it minimizes the impact of the conviction upon innocent dependants of the offender.

1.3 Criteria for granting probation.

(a) The probation decision should not turn upon generalizations about types of offenses or the existence of a prior criminal record, but should be rooted in the facts and circumstances of each case. The court should consider the nature and circumstances of the crime, the history and character of the offender, and available institutional and community resources. Probation should be the sentence unless the sentencing court finds that:

(i) confinement is necessary to protect the public from further criminal activity by the offender; or

(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

(iii) it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed.

(b) Whether the defendant pleads guilty, pleads not guilty, or intends to appeal is not relevant to the issue of whether probation is an appropriate sentence."

In discussing this subject, Boldt, in an article, Recent Trends in Criminal Sentencing, Fed. Prob., March 1963, p. 3, at 5, observed:

"Every available study on the results of probation in actual practice indisputably shows it to be a highly successful form of sentence. The percentage of probation sentences has been steadily rising without such a rise in revocations as to indicate need for stopping, or even slowing, the trend toward wider use of probation. My personal experience in a large number of cases, carefully recorded, has dispelled every last doubt I ever had as to the wisdom and justice of not excluding the possibility of probation in the vast majority of cases. In my opinion, the granting of probation should be ruled out only when the judge is satisfied that security of the community and its individual citizens so requires. From the evidence it is apparent more and more—judges throughout the nation are having the same results and are reaching substantially the same conclusion."

Regional and national studies confirm the efficacy of probation as an affirmative correction tool. 2 Attorney General's Survey of Release Procedures (1939) included an extensive and most useful study of the frequency of revocation of probation, and the results also indicate the relationship between known violations and revocations. The study covered 19,256 cases in twenty-five probation units in sixteen states and the District of Columbia. The cases comprised a random sample of the probationers whose probation periods were terminated either by revocation or discharge, during the three-year period from 1933 to 1935, inclusive. The most significant results of the study were as follows:

(1) Probation was revoked in about one-fifth (19 per cent) of the cases studied;

(2) Probation was revoked in the case of almost one-third (32 per cent) of the recidivists put on probation, whereas it was revoked in the case of only 14 per cent of the first offenders put on probation;

(3) Probation was revoked in the case of about one-third of all totally unemployed probationers, as against the revocation of probation in the case of only 7 per cent of fully employed probationers; and

(4) Probation was revoked in the case of 21 per cent of the probationers under 25 years of age, and in the case of 14 per cent of those of 35 years of age and over.

Reported in Probation and Related Measures, United Nations Department of Social Affairs, New York, 1951, at pages 104-105.

An exhaustive study was undertaken by the State Board of Correc-

tions of California in 1965 of 11,638 adult probationers who were admitted to probation during the period of 1956-1958. The results of that study show that approximately 72 per cent were successful in not having their probation revoked. Cited in President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections (1967), at page 28.

A review of eleven probation studies by Ralph W. England, Jr., indicates that 60 to 90 per cent of probationers succeed on probation. Eight of the studies fall within the 70 to 90 per cent range of post probation success. Included is a study of juvenile probationers wherein success is measured by 84 per cent. England's own study of adult federal probationers indicates that 82.3 per cent succeed on probation. Cited in Frank R. Scarpitti's and Richard M. Stephenson's "A Study of Probation Effectiveness," Journal of Criminal Law, Criminology and Police Science, 59: 361-369 (September, 1968).

In addition to the fact that probation often offers the best possibility of meaningful rehabilitation, it is considerably less expensive than institutonalization. Figures supplied to the Advisory Committee by the Administrative Office of the United States Courts indicate that in fiscal 1964 the per capita cost of probation in the federal system was 59 cents a day, while the cost of housing a prisoner in a federal institution was $6.35 per day. The annual figures were $215 and $2,318, respectively. The Administrative Office reports in addition that probationers during the period in question earned $62 million. Intangible costs in terms of impact on a family deprived of its breadwinner, including possible welfare payments, add to the cost of incarceration, not to mention the cost per inmate of the construction of facilities for housing prisoners. Compare Herlands, When and How Should a Sentencing Judge Use Probation, 35 F.R.D. 487, 498 (1964). Crime Commission figures disclose that the average state spends approximately $3400 a year, excluding capital expenditures, to keep a youth in a state training school, while probation for the same period costs approximately one-tenth of that amount. Construction costs are estimated to be in excess of $20,000 per bed in a correctional institution. Sentencing Alternatives and Procedures, American Bar Association Project on Minimum Standards for Criminal Justice, Approved Draft, 1968.

■■ The foregoing indicates that in those cases where the chances for rehabilitation are good, probation is a much more effective tool for the protection of the public from future crimes of the defendant than is a prison sentence in those cases where it is probable that the defendant is not likely to commit another crime; the public interest does not require incarceration and the rehabilitation of the defendant does not require

incarceration. This is not to say that hardened and veteran criminals should not be removed from society for reasons of safety, but that probation is in order when the conditions of Ill. Rev. Stat. 1967, ch. 38, par. 117—1 have been met.

Although probation involves a calculated risk each time that it is given, the statistics disclose that the risks to the public are much less in using probation as an affirmative corrective tool than in the system of automatic sentencing to prison in all cases. Probation proceeds on the simple formula that taking a man out of society is not the best way to teach him in society.

■■ Since appellant for all 29 years of her life has given every external evidence of personal and social adjustment to society except for her acts in this case, it is probable that she is not likely to commit any crimes in the future. The public interest does not require that she be incarcerated and her rehabilitation does not require that she be incarcerated. On the basis of her excellent prior record and the other circumstances set forth in the report of the Probation Office, the interest of the defendant and of the community would have best been served had she been released under probationary supervision to allow her to work out her problems in the realistic, normal, day-to-day environment of the community. Furthermore, since the record discloses that the defendant is quite capable of holding a responsible job and supporting her family, we are persuaded that the best interest of society would be served by granting her probation without a condition of incarceration.

For the foregoing reasons the judgment of the Circuit Court of St. Clair County is reversed, and the cause is remanded with directions to the Circuit Court of St. Clair County to vacate the order sentencing the defendant to the penitentiary and for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

EBERSPACHER and GOLDENHERSH, JJ., concur.