(No. 49055.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIAM J. WAUD, Appellant.

*Opinion filed November 30, 1977.*

Charles H. Delano and Barry Chafetz, of Springfield, for appellant.

William J. Scott, Attorney General, of Springfield, and Brenda Sweeney, State's Attorney, of Taylorville (John F. Podliska, Assistant Attorney General, of Chicago, and Bruce D. Irish, of the Illinois State's Attorney's Association Statewide Appellant Assistance Service, of Mt. Vernon, of counsel), for the People.

MR. JUSTICE MORAN delivered the opinion of the court:

Following a plea of guilty to six counts of forgery, the defendant, William Waud, was convicted by the circuit court of Christian County and sentenced to concurrent terms of 1 to 10 years in the Illinois State Penitentiary. On appeal, the appellate court, in a two-to-one decision, affirmed the conviction but modified the sentence by reducing the maximum term from 10 to 3 years. (43 Ill. App. 3d 85.) We granted the defendant leave to appeal.

The sole issue raised is whether the trial court acted arbitrarily in refusing to grant probation.

While serving as a high school principal, the defendant acted as a part-time general contractor. During 1973, while engaged in the construction of two homes, the defendant forged certain mechanic's lien waivers, either by signing the

names of the materialmen or subcontractors or by altering the stated amounts. The six lien waivers were forged over a 5½-month period. At the time of the sentencing hearing, the defendant had been placed in involuntary bankruptcy, his home and real estate holdings had been or were being foreclosed, and there were numerous civil suits pending as the result of his business failure. Because of the instant charges, defendant was dismissed from his position at the high school. He subsequently secured employment as a foreman at a nearby steel company.

Defendant filed a motion for probation indicating he had a teacher's pension fund which was not subject to the claims of his creditors and which would be made available to the two defrauded homeowners if he was granted probation. Aside from one criminal charge apparently outstanding at the time of the sentencing hearing—one involving a forgery count similar to those of which defendant was convicted—defendant's only other criminal conviction consisted of a traffic violation in 1972. Defendant was married and had five children, all of them minors and living at home.

At the hearing in aggravation and mitigation, 14 witnesses who were friends, relatives, or associates of the defendant attested to his good character and reputation as a father, a teacher, a principal, and as a leader in the community. All of the witnesses suggested that defendant be granted probation, and several specifically indicated that, in their estimation, the granting of probation would not deprecate the seriousness of his offenses. In addition to these witnesses, 30 other individuals appeared on defendant's behalf and placed their names in the record in support of defendant's request.

Following the defendant's evidence in mitigation, the State introduced the testimony of the two defrauded homeowners. Esther Klaus testified that, at the time she contracted with the defendant to build her home, she was

a widow living with her minor son. In order to finance the new home, the witness borrowed $16,000 and paid the balance from the proceeds of her late husband's insurance. After paying the entire contract price of $23,000, Mrs. Klaus was informed of the forged lien waivers. At the date of the hearing, approximately $14,000 in unpaid liens were outstanding against her home, and she was unemployed. The witness further testified that she was offered one half of the defendant's $9,000 teacher pension fund if she would come into court and request that defendant be placed on probation.

Billie Lahue, the other homeowner, testified that he had contracted with the defendant to build a new home at the contract price of $34,000 and had obtained a construction loan from a local savings and loan company in order to finance the construction. To Lahue's knowledge the defendant had received the entire contract price from the loan proceeds but, as of the date of the hearing, there were approximately $17,000 in unpaid liens outstanding against his home. Lahue's lawyer had informed him of defendant's pension fund and of defendant's willingness to share it with Lahue and Mrs. Klaus if they would support defendant's request for probation. Lahue refused the offer.

During argument, defendant's counsel reiterated defendant's good reputation and prior standing in the community. He emphasized defendant's financial losses and the suffering of his family due to these charges. He indicated that the forgeries were the result of defendant's financial mismanagement. Counsel stated that the offers made to the two victims were made by him through the victims' mutual attorney, and that conditions were attached to insure that the defendant's family would have adequate resources in the event that defendant did not receive probation. Defense counsel urged that no purpose would be served by sentencing defendant to imprisonment,

that defendant was presently employed, and that the seriousness of the offenses would not be deprecated if probation was granted.

The State did not oppose probation. It admitted that incarceration was not required in order to protect the public from further criminal activity, and that defendant was not in need of correctional treatment. The State did, however, express its reservation about whether probation might not deprecate the seriousness of the offenses in light of the number of forgeries, the length of time over which they had occurred, and their premeditated nature.

Following defendant's statement to the court in which he expressed his sorrow and his desire to make amends to the extent possible, the court sentenced defendant to imprisonment, finding that, pursuant to section 5—6—1(a)(3) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—1(a)(3)), probation would deprecate the seriousness of the defendant's conduct.

Relying on *People v. Bolyard* (1975), 61 Ill. 2d 583, and *People v. McAndrew* (1968), 96 Ill. App. 2d 441, the defendant contends that certain remarks evinced at the hearing indicated that the trial court arbitrarily refused to consider probation as a sentencing alternative solely because defendant was a "prominent citizen" in the community. He further asserts that there is no evidence in the record to justify the court's conclusion that probation would deprecate the seriousness of the crimes.

This court has consistently held that a refusal to grant probation will not be disturbed by a reviewing court unless the defendant affirmatively establishes that the trial court acted arbitrarily. *People v. Rege* (1976), 64 Ill. 2d 473, 482-83; *People v. Bolyard* (1975), 61 Ill. 2d 583, 586; *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 555; *People v. Carpenter* (1953), 1 Ill. 2d 347, 349-50.

In refusing to grant probation, the trial court made the following remarks:

"Well, I find that I am unable to grant probation in this case today. As you know the statute says that a man shall be imprisoned unless he is able to meet the criteria that have been spoken of here today. And of course, the one that Mr. Waud fails is the seriousness of the offense and the effect on justice.

We are not talking about one mistake here. We are talking about six mistakes. Six felonies. Matters that had to be premeditated. Each one of them. And these didn't happen in rapid sequence. They happened over a period of months."

The court then noted defendant's prominence in the community and his relationship to the youth of the community as a teacher and principal. It then stated:

"Probation for such a man would be bound to have quite an impact on the young people that knew him. The future temptations that might be afforded to youth that knew of this instance, if probation were granted, would be, might be too great. *** [W]e can't have a system of law whereby only the friendless go to jail. Or the followers or the uneducated or the poor. But as I say, Mr. Waud is an educated man. This is an educated crime. I believe if we had a man in the community that embezzled money from a bank six different times the people would have the idea that if such a man got probation that almost anybody could get probation."

Examining the above remarks, it is clearly evident that the court did not arbitrarily refuse to grant probation solely because defendant was a member of a class of "prominent individuals." It merely emphasized that an educated, prominent individual with many friends and associates is not automatically entitled to probation. In the exercise of the trial court's discretion, it determined that probation would deprecate the seriousness of the crime, given the extent and nature of the offenses, and the length of time over which they occurred. The court further found that probation would be especially inappropriate in light of the seriousness of the offenses, the defendant's former authoritarian position with respect to the youth of the

community, and the potential for disrespect for the administration of justice.

The *Bolyard* and *McAndrew* cases relied on by defendant are clearly distinguishable from the case here. In *Bolyard,* the defendant had been convicted of indecent liberties with a child. In refusing to grant probation, the trial court stated that it adhered to a policy in which crimes of sexual violence were simply not probationable, and that in its opinion defendant's act was the "most sinful, reprehensible act of all offenses." (61 Ill. 2d 583, 585.) In *McAndrew,* the trial court refused to grant probation to a defendant convicted of unauthorized possession of a controlled substance. The court expressed, among other things, a belief that "hippies" were a menace to society, and it denounced defendant's desire to be identified as such. (96 Ill. App. 2d 441, 445-51.) In *Bolyard* and *McAndrew* the reviewing court found the trial court decisions had been arrived at arbitrarily and therefore reversed that court's refusal to grant probation. Here, the trial court did not categorize defendant as one of a class which, under all circumstances, is simply not probationable. The record does not indicate that the court had a bias or prejudice against the defendant or that it did not give full and fair consideration to the statutory factors applicable in connection with the granting of probation.

Defendant further asserts that there was no evidence to support the trial court's conclusion that probation would deprecate the seriousness of the offenses. He contends, rather, that all the evidence indicates that he was a prime subject for probation. We believe that the number of forgery offenses committed, the amounts involved, and the hardships brought upon the homeowners speak for themselves. A crime need not be one of violence before it can be considered serious. The facts that a defendant has led a good life prior to his or her shortcomings and is not likely to repeat his or her failures again are factors to be

considered by the trial court, but they are not conclusive factors. The State does not have a burden of producing empirical data to support the trial court's conclusion that probation will deprecate the seriousness of the offense. The court may reach such determination by examining all of the surrounding circumstances and drawing the reasonable inferences therefrom.

Section 11 of article I of the 1970 Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense *and with the objective of restoring the offender to useful citizenship*" (emphasis added), but, as this court has indicated in *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 556-57, "[t]here is no indication that the italicized portion of section 11 is to be given greater consideration than that which establishes that the seriousness of the offense shall determine the penalty." It is not our function to serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we might have imposed a different sentence had that function been delegated to us. *People v. Perruquet* (1977), 68 Ill. 2d 149, 156.

Accordingly, we find that the defendant has failed to affirmatively establish that the trial court acted arbitrarily in refusing to grant probation, and therefore we affirm the decision of the appellate court.

*Judgment affirmed.*