THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PAMELA THOMAS, Defendant-Appellant.
Fifth District    No. 78-196

Opinion filed August 30, 1979.

JONES, P. J., dissenting.

John H. Reid and John W. McGuire, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Pamela Thomas appeals from a judgment of the circuit court of St. Clair County finding her guilty of the offenses of perjury and forgery in connection with misrepresenting her identity in a primary election in the city of East St. Louis. Following a bench trial, a presentence investigation was ordered which revealed no prior history of criminality and made no specific recommendations as to punishment. At the sentencing hearing defendant elected to be sentenced under the new Illinois sentencing act (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—3—1 *et seq.*), which significantly revised both the practical and theoretical approaches to sentencing in the State of Illinois. Defendant was sentenced to two years' imprisonment in the Department of Corrections and has sought review of both the judgment and the sentence. Specifically, defendant contends that she was improperly convicted of both perjury and forgery for the single physical act of signing another's name to an

election ballot, and that the sentence imposed by the trial court is clearly excessive under the facts of this case.

The State concedes that one of defendant's convictions must be vacated as both of them are based on the same underlying act. The State has no preference as to which conviction is vacated, since both are Class 3 felonies and carry the same penalty. Defendant has requested that the forgery conviction be the one which is vacated, so we hereby vacate count II of the indictment charging defendant with forgery, and the judgment entered thereon. We further hold that the two-year prison sentence for perjury is erroneous in this particular case and hereby remand the cause for renewed sentencing with an order to grant probation on such terms and conditions as the trial court deems proper.

The facts of this case relate to a primary election held on February 8, 1977, in East St. Louis, Illinois, for the election of aldermen. The State produced evidence showing that an individual later identified as the defendant presented herself at Precinct 29 and requested ballots in the name of Eilounder Jones. This individual filled out a "certificate of voter" in that name before one of the election judges and proceeded to enter one of the voting machine booths, drawing the curtains closed behind her. There was apparently some discussion among the election judges to the effect that this person did not look old enough to vote and upon checking the registration book, it was discovered the Eilounder Jones was a woman in her thirties, considerably older than the person voting. Later that day, one of the election judges, an investigator from the State's Attorney's office and a representative from the State Board of Elections went to the address indicated on the ballot and asked for Eilounder Jones. The defendant's stepfather, Bobby Red, answered the door and replied that Eilounder Jones did not live there any longer. The defendant was in the background and was identified by the election judge as the person who had voted under the name of Eilounder Jones. Mr. Red and the defendant were requested to appear at the State's Attorney's office the next day regarding the matter, where they were interviewed and each made a statement.

In her statement, the defendant admitted going to the polls and voting in the name of Eilounder Jones. She stated that this was done at the request of her stepfather, who had been working as a poll watcher that day. The defendant was 18 years of age at the time and was not a registered voter in St. Clair County.

A motion to suppress the confession was denied after a hearing, at which defendant testified that she made the statement with the understanding that "the matter would go no further than that." Her stepfather made a statement at the same time in her presence, apparently claiming responsibility for the incident. The court found the statement to

be voluntary and not made in response to promises of nonprosecution.

The defendant was formally charged by indictment nearly four months later. Her plea of guilty to the perjury charge in return for dismissing the forgery charge was retracted when the presiding judge indicated he was not willing to grant probation. Defendant then went to trial before a different judge and was found guilty on both charges.

A sentencing hearing was held at which arguments in aggravation and mitigation were considered. The trial judge afforded the defendant an opportunity to speak on her own behalf and asked the attorneys on both sides for their recommendations. After stating that he had seriously considered the presentence report, the trial judge assessed the defendant's punishment at two years imprisonment, the minimum sentence for a Class 3 felony under the new statute. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—8—1(a)(6).) His statement on the record for imposing this particular sentence was:

> " I think it is necessary that this be done for the simple reason that it should act as a deterrent to some of the other people who actively participate in such activities which have brought this smog of disgrace upon our community."

The presentence report showed the defendant to be 19 years of age at the time of the sentencing. She was working fulltime at a fast food establishment and attending junior college on a part-time basis, taking secretarial courses. Her mother and stepfather were married when defendant was an infant and she regarded her stepfather as her actual father, although she was never adopted. Both parents were employed and the family managed without receiving any type of public assistance. Defendant had no prior convictions although she had once been arrested for trespass, but the charge was dismissed.

At the sentencing hearing, the State presented no evidence in aggravation but argued that the nature of the case warranted some type of deterrent action. The prosecutor commented that the defendant's actions served to disenfranchise others and that she did not appear to be remorseful. He further noted that vote fraud is a difficult offense to detect and prove and that straight probation would not serve to deter others from committing it.

The defendant argued in mitigation that other deterrents than imprisonment existed in this case, such as the adverse publicity her prosecution had engendered, the collateral consequences of her felony conviction, and the prospective sentencing of her co-defendant stepfather who was a more culpable party. In addition, defendant argued that imprisonment would work a severe hardship on her, causing her to lose her job and postpone her education.

In response to these arguments the trial court acknowledged that

defendant was not the most culpable party, but stated that there was no indication of any protestation on her part to commit the act. The court believed that her good record indicated that she should have known better and that corrective action by the court was necessary to forestall the abuse of the privilege of voting in East St. Louis.

Defendant contends on appeal that the denial of probation or conditional discharge for the sole purpose of deterrence was unfair, unnecessary and in contravention of the statutory policy of the new sentencing act. The amended Unified Code of Corrections has a legislatively expressed preference for probation as a sentencing alternative in appropriate cases. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—6—1(a).) An "appropriate case" is one where the Code has not specifically precluded probation (see par. 1005—5—3(c)(2)), or where the nature and circumstances of the offense together with the history, character and condition of the offender indicate (1) that imprisonment is not necessary to protect the public or (2) that probation would not deprecate the seriousness of the conduct and be inconsistent with the ends of justice at the same time (par. 1005—6—1(a)).

This is not a situation where probation has been specifically precluded. Looking to the other considerations listed in the statute for denying probation, defendant concedes that the nature of the offense (*i.e.*, violation of the voting laws) is very serious and that protecting the integrity of the electoral process might warrant making an example of an offender. However, the statute clearly states that the history, character, and condition of the offender be considered in determining the propriety of probation. In this case, the defendant points out her young age at the time of the offense, the fact that this is her first offense, the fact that she was pressed by her stepfather to commit the offense, and her strong potential for rehabilitation as indicated by her initiative and productivity within a year of the offense.

The new sentencing law sets out a series of mitigating factors to be considered on the question of probation. Consideration of these factors is not discretionary with a sentencing court—the statute reads: "The following grounds *shall* be accorded weight in favor of withholding * * * a sentence of imprisonment." (Par. 1005—5—3.1(a).) (Emphasis added.) Many of the factors cited by defendant above are listed in the statute as mitigating: The defendant's criminal conduct was induced or facilitated by someone other than the defendant (par. 1005—5—3.1(a)(5)), the defendant has no history of prior delinquency or criminal activity (par. 1005—5—3.1(a)(7)), and the character and attitude of the defendant indicate that she is unlikely to commit another crime (par. 1005—5—3.1(9)). In addition, several other factors appear to be applicable: The defendant's criminal conduct neither caused nor

threatened serious physical harm to another (par. 1005—5—3.1(a)(1)), the defendant's criminal conduct was the result of circumstances unlikely to recur (par. 1005—5—3.1(a)(8)), and the defendant is particularly likely to comply with the terms of a period of probation (par. 1005—5—3.1(a)(10)).

The statute also lists certain factors to be accorded weight in favor of imposing a sentence of imprisonment. These "aggravating" factors are contained in section 5—5—3.2 and of the seven listed therein, only one appears generally applicable. Subsection (a)(7) directs the court to consider whether the sentence is necessary to deter others from committing the same crime. The remaining factors are really the reverse of the mitigating factors listed above, such as the fact that the defendant's conduct caused or threatened serious harm and the defendant's history of prior criminality. (Par. 1005—5—3.2(a)(1) and (3).) The others deal with abuse of position or influence. Par. 1005—5—3.2(a)(3),(4),(5) and (6).

In response to the defendant's contention that she was an ideal candidate for probation or conditional discharge, the State argued that her good background and future intentions in fact aggravated the offense, because this is an "educated" or "white collar" crime. The State emphasizes  the defendant's age and intelligence as indicating that she should have known better and is responsible for her own behavior. In support of its position, the State relies upon *People v. Waud* (1977), 69 Ill. 2d 588, 373 N.E.2d 1, where a high school principal was convicted of six counts of forgery and sentenced to one to 10 years imprisonment. The defendant in *Waud* worked part time as a general contractor and forged six lien waivers over a 5½ month period while constructing some houses. In denying probation, the court stressed that six separate, premeditated felonies were involved. In addition, the court viewed probation as inconsistent with the ends of justice, both in terms of the effect of defendant's conduct on the victims and on the community. The defrauded home owners faced severe financial hardships and the defendant's former position of authority made him a role model for young people.

■■■ In contrast to *Waud* the defendant is not contending that the trial court acted arbitrarily in refusing probation by categorizing her as a member of a class which is simply not probationable. Rather, she contends that the denial of probation was erroneous in her particular situation. Erroneous sentencing, not arbitrariness, is the thrust of the new sentencing law. (*People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670.) This is because the statute is aimed at uniformity of sentencing for similar type offenses and seeks to limit the role of judicial discretion in the sentencing process. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—5—4.2; *Aspen, New Class X Sentencing Law: An Analysis*, 66 Ill. Bar. J. 344 (1978);

McAnany, Merit, Troman-Houser, *Illinois Reconsiders "Flat Time": An Analysis of the Impact of the Justice Model*, 52 Chi.-Kent L. Rev. 621 (1976); Report of the Subcommittee on Adult Corrections of the Illinois House Judiciary II Committee (1976); Bagley, *Why Illinois Adopted Determinate Sentencing*, 62 Judicature 390 (1979).) When discretion is curtailed, the question on review is whether the trial judge acted within the scope of the statute, and the focus is on objectively verifiable factors rather than subjective sentencing within the statutory range. In *Waud*, the court did not have to rebut the presumption of probation as a proper sentencing alternative since the case was decided under the old sentencing law, in which imprisonment was unrealistically viewed as the "cure-all" to both society's and the offender's problems. Report of the Subcommittee on Adult Corrections of the Illinois House Judiciary II Committee (1976).

It is clear that the defendant in *Waud* was being punished for his own misconduct, not for the sins or "disgrace" of the community. The nature and extent of his actions are simply not comparable to the defendant in this case. Pamela Thomas committed one offense, not six, on a request of her stepfather, not some premeditated plan to defraud. Her actions were confined to one point in time, not part of a continuing criminal plan stretching out over many months. She is not an authority figure in the community against whom others might measure their conduct. Certainly, she should have known better, but this can be said of practically anyone who breaks the law. This is certainly conduct that should be punished, but the punishment should be proportionate to the offense. Just because a certain sentence is within the statutory range of penalties for a given offense does not mean that it is proportionate. This is where the guidelines set forth in the sentencing law fit in—to tailor the punishment to the particular facts and circumstances.

The determination of whether a particular sentence is erroneous is made by reviewing the record to see if the trial judge fairly and accurately applied the sentencing criteria contained in the statute and then measured them against the exceptions to the general rule of probation which are set forth in the statute. We have already noted that this is not a situation where imprisonment is mandated. Therefore, after considering the nature of the offense and the offender, imprisonment must either be necessary to protect the public or to guard against depreciating the seriousness of the misconduct while furthering the ends of justice. Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—6—1(a).

It is imperative that full and fair consideration be given to the statutory factors applicable to the granting of probation. While the statute makes no provision for weighing the various factors in aggravation and mitigation against each other, we have already noted that the balance of

factors is on the mitigating side. Does the sole aggravating factor of the need for deterrence so outweigh the balance of factors on the other side that it tips the scale in favor of imprisonment? The defendant clearly does not pose such a threat to society that her imprisonment is necessary to protect the public. While we agree with the State that a crime need not be one of violence before it can be considered serious, imprisonment is not the sole method nor is it necessarily the most effective method of dealing with a nonviolent crime. Thus we must determine whether probation would deprecate the seriousness of her conduct and be inconsistent with the ends of justice.

■■ We hold that in the context of this case, imprisonment is not warranted. Where a defendant has led a law-abiding life before and after the time of an offense which was not the result of her own criminal intentions, where she does not pose a danger to society, where she is engaged in productive activity and self-betterment, imprisonment would serve no legitimate ends of justice. The penitentiary is not a place where proper social habits are learned or reinforced; it merely serves to keep incorrigibles off the street. (Aspen, *New Class X Sentencing Law: An Analysis*, 78 Ill. B. J. 344 (1978).) The concept of punishing one individual to possibly deter others is questionable both in terms of utility and fairness. To make an example of an offender so as to discourage others from criminal acts is to make him suffer not for what he has done alone, but because of other people's tendencies. *People v. Knowles* (1979), 70 Ill. App. 3d 30, 388 N.E.2d 261.

■■■ Probation is an adequate punishment in this case. Probation is properly viewed as a sentence just like any other sentence, being executed in an ambulatory fashion rather than by physical confinement. (ABA Project on Standards for Criminal Justice, Standard Relating to Probation, Commentary to §1.1(b) (1972).) It is more than a merciful act by the court in cases where there are mitigating circumstances, it is an affirmative correctional tool offering maximum benefit to both the public and the defendant. (*People v. McClendon* (1970), 130 Ill. App. 2d 852, 265 N.E.2d 207.) That sentence which has the greatest potential of restoring the offender to a useful and productive place in society while at the same time adequately punishing the offender for his misconduct and safeguarding the public from further offenses is the one which should be imposed. (*People v. Harpole* (1968), 97 Ill. App. 2d 28, 239 N.E.2d 471.) The defendant in this case will bear the stigma of a criminal conviction, and her freedom will be restricted during the period of her probation. To punish her further for the *sole* purpose of teaching a lesson to others contravenes not only the policy of the new sentencing law, but is patently unfair and clearly erroneous.

The judgment of the circuit court of St. Clair County as to count II is vacated. The judgment as to count I is affirmed. This cause is remanded to the circuit court of St. Clair County for renewed sentencing with an order to grant probation on such terms and conditions as the trial court deems proper.

Affirmed in part; vacated in part; remanded with instructions.

KASSERMAN, J., concurs.

Mr. PRESIDING JUSTICE JONES, dissenting:
I respectfully dissent.

The majority speaks both broadly and pointedly about the new Illinois sentencing act being designed to achieve a uniformity of sentencing for persons convicted of crimes. Such interpretation is unwarranted, for common sense tells us that we can achieve uniformity of sentencing only when we have uniformity of offenders. Such uniformity, of course, can never be. The majority speaks also of the limitations placed upon sentencing judges if they are to conform to the sentencing scheme of the new Illinois sentencing act. They find that the discretion of the sentencing judge is largely curtailed if not entirely abolished. Yet it is this discretion, and this discretion alone, that can discern, measure and evaluate the limitless nuances that serve to distinguish offenders, their offenses, and the appropriate sentence to be imposed. No statute could ever establish sufficient criteria with which a sentencing judge, much less a reviewing court, could classify offenders by their personalities, background, social and economic history, education, nature of offense, etc., so as to apply a uniform sentence to all who are equally culpable and equally capable (or incapable, as the case may be) of rehabilitation.

I sense that the majority would abolish the discretion of the sentencing judge and place it in the court of review in order to assure that the several trial courts were in fact achieving uniformity in sentencing. If such is the case then it would be retrogressive to the entire criminal justice system. The best, if not the only, place for the exercise of discretion lies with that judge who deals at first hand with the offense, the offender, the trial and its witnesses. No other can properly evaluate the many factors brought to bear in the trial of a criminal case. The milieu in which an offender is tried, convicted and sentenced simply cannot be duplicated for a *de novo* consideration of sentence by a court of review by setting the proceedings down on paper. Far too much of the impact of a trial is lost in the transmission of words to paper. It has been, and must remain, sufficient for a court of review to consider what was done by the trial

court and then determine whether, as a matter of law, there was a failure to conform to the required norm and that prejudice resulted to the defendant.

In this case the record affirmatively shows that the trial court fully complied with the sentencing statutes, to a degree, in fact, we do not normally see in a sentence hearing. He found it necessary to impose a sentence of imprisonment to serve as a deterrent to others and forestall the abuse of the voting privilege. Of these considerations of the trial court the majority says nothing. The nexus of defendant's offense was that she was depriving people of their right to govern themselves. Serious indeed. It is so regarded by the legislature. The defendant is adult and without question fully aware of the criminality of her act. When consideration is given to all the factors presented to the trial court, the sentence imposed must be deemed not to be, in the words of the statute, "inconsistent with the ends of justice."

The most that can be said for the position of the majority is that they disagree with the sentencing judge. I, however, disagree with the majority. I would affirm.