THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JUAN CRUZ, Defendant-Appellant.

First District (6th Division)   No. 1—91—0603

Opinion filed June 11, 1993.

Rita A. Fry, Public Defender, of Chicago (Stephanie L. Ellbogen, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Laura L. Morrison, and Rogelio Pena, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GIANNIS delivered the opinion of the court:

Following jury trial defendant was found guilty of attempt (first degree murder) (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4, 9—1), armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2), and possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)(2)). The armed violence and possession charges were merged following conviction, and defendant was sentenced to a prison term of 30 years on the attempt conviction and a 15-year prison term on the armed violence conviction, both sentences to run concurrently.

The facts of this case may be fairly summarized as follows. At approximately 9:40 p.m. on January 6, 1990, police officers Franco and Harris observed defendant distributing drugs at a Chicago housing project. At the time, the officers were in civilian clothing. As Harris attempted to apprehend defendant, both men "bounced" into one another; defendant ran and was pursued by Franco into a nearby parking lot as Harris followed. When the defendant and Franco were very close to one another, defendant turned and fired one shot into Franco's bullet-proof vest, then a second shot, which entered Harris' elbow and struck his abdomen. Harris stopped to check on his partner, then continued the chase of defendant. A second pair of officers, Officers Bonner and Ford, rendered assistance to Franco.

Defendant ran into a nearby building. Harris followed, but soon lost sight of defendant. Harris met up with Officers Feldman, Jackson and Doby, and these policemen split up and entered the building. Defendant was ultimately arrested on the thirteenth floor by Officer Doby. A search of defendant revealed several small plastic bags containing cocaine. Defendant took the officers to a stairwell to recover a gun on the twelfth floor which was later shown to have been used to shoot Franco.

Defendant testified that on January 6, 1990, at approximately 9 p.m., he was on his way home from his girlfriend's house when he was approached by Mike Stone, a leader of a local street gang. Stone was accompanied by three others whom defendant referred to as

"foot soldiers." According to defendant, he was given a gun as well as cocaine and ordered to work as a "holder." He stated that a holder keeps drugs for the people who actually sell them and that sellers go to the holders to replenish their supply. Defendant testified that he accepted the drugs because he feared getting shot and because Stone had threatened to hurt his family. Stone also told defendant to protect the drugs "at any costs" and that defendant should shoot anyone who attempted to take them.

Defendant testified that as he stood outside that night, he handed out three packages of drugs to Stone's foot soldiers. Later, he noticed two men wearing starter jackets and blue jeans running toward him. Defendant immediately ran. He testified that he glanced back and noticed the person behind him make a motion toward his chest where defendant claims to have seen a gun. Defendant took out his gun and fired a shot as he ran. Defendant was still being pursued when he fired a second shot. Defendant testified that he did not hear anyone say "police" or see that the men chasing him were wearing badges.

At the police station, defendant gave a written statement where he indicated that he was selling drugs to make money and had the gun for protection because he did not want his drugs stolen. Defendant further stated that after he sold his drugs he noticed two policemen coming towards him and he started running. As one of the policemen got closer, defendant fired two shots at the officer. Nothing in defendant's statement indicated that he had been forced to hold the drugs or the gun given by Mike Stone or that any gang members had threatened him.

Defendant raises the following issues for review: (1) whether the trial court committed reversible error in refusing a tendered instruction for the crime of attempt (second degree murder); (2) whether defendant was deprived of a fair trial by comments made by the prosecutor during closing argument; and (3) whether the trial court abused its discretion in sentencing defendant to a 30-year prison term.

■ The defendant first argues that the trial court erred in not tendering instructions to the jury on the crime of attempt (second degree murder). In Illinois, the crime of attempt requires the specific intent to commit an offense. *People v. Reagan* (1983), 99 Ill. 2d 238, 240.

In 1987, the Illinois General Assembly replaced the statutory offense of voluntary manslaughter with the offense of second degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2.) To be convicted of second degree murder, a defendant's action must have been motivated by

either: (1) a sudden and intense passion resulting from serious provocation; or (2) an actual but unreasonable belief that the circumstances required the use of deadly force as a means of self-defense. (Ill. Rev. Stat. 1989, ch. 38, pars. 9—2(a)(1), (a)(2).) Under the former statute, the State had the burden of disproving either provocation or unreasonable belief beyond a reasonable doubt. The new statute requires the State to prove the elements of first degree murder beyond a reasonable doubt (that defendant knowingly or intentionally killed without legal justification) and thereafter the defendant has the burden to prove by a preponderance of evidence one of the two mitigating factors.

In the present case, defendant claims that at the time he acted in shooting Officer Franco, he believed himself to be acting in self-defense, *i.e.*, with lawful justification. The State claims that this belief, if genuine, is inconsistent with any jury instruction on the offense of attempt (second degree murder). As the supreme court stated in *Reagan*, "The requirement of the attempt statute is not that there be an intent to kill, but that there be an intent to kill without lawful justification. If, as suggested ***, defendant at the time of the shooting believed the circumstances to be such that if they existed would justify the killing, then there was no intent to commit an offense." *Reagan*, 99 Ill. 2d at 240.

Defendant cites *People v. Austin* (1991), 215 Ill. App. 3d 323, and *People v. Moore* (1990), 204 Ill. App. 3d 694, to support his claim that the crime of attempt (second degree murder) exists in Illinois. In *Austin*, the court concluded that the *Reagan* decision should not apply to the new offense of second degree murder. "[E]ven the *Reagan* court acknowledged that there could be such an offense [as attempt (second degree murder)] but for the fact that our attempt statute requires specific intent and voluntary manslaughter is not a specific intent crime." (*Austin*, 215 Ill. App. 3d at 332.) Both *Austin* and *Moore* justified their result by deciding that the second degree murder statute had substantively altered the voluntary manslaughter statute. Under the new statute, according to these decisions, the intent element should be considered unrelated to the mitigating factors of provocation or unreasonable belief. (*Moore*, 204 Ill. App. 3d at 698; *Austin*, 215 Ill. App. 3d at 332-33.) Defendant also notes that the Illinois Supreme Court Committee on Jury Instructions in Criminal Cases has recently promulgated instructions on the offense of attempt (second degree murder). Illinois Pattern Jury Instructions, Criminal, Nos. 6.05Y, 6.05Z (3d ed. 1992).

However, the question of whether attempt (second degree murder) is a crime in Illinois was recently addressed by the appellate court in *People v. Aliwoli* (1992), 238 Ill. App. 3d 602. After reviewing the relevant cases, academic commentary and legislative history, and after recognizing the various splits in these authorities, the *Aliwoli* court concluded that the *only* change affected by Illinois General Assembly's shift from the offense of voluntary manslaughter to the offense of second degree murder "was a shift in the burden of proving the mitigating factors from the State to the defendant." (*Aliwoli*, 238 Ill. App. 3d at 621 & n.4.) *Aliwoli* relied, therefore, upon the analysis provided the supreme court in *Reagan* and concluded that "the crime of attempted second degree murder is not a crime in Illinois." *Aliwoli*, 238 Ill. App. 3d at 623. See also *People v. Lopez* (1993), 245 Ill. App. 3d 41.

Because we agree that the legislature has not changed the substance of the former voluntary manslaughter statute in enacting the second degree murder statute, we follow *Reagan* and conclude that attempt (second degree murder) is not a crime in our State. The trial court's refusal to tender such an instruction is therefore upheld.

■ Defendant next argues that the prosecution unfairly prejudiced his case by making certain comments during closing arguments. During the initial portion of closing argument, the prosecutor argued the following without objection: "The defendant is charged with attempted murder. When you attempt something, you try something. When you murder someone, you kill someone. Try to kill. Juan Cruz tried to kill Lynden Franco on January 6, 1990. The evidence clearly established that."

As is evident from the above discussion, the prosecutor's shorthand summary of the law of attempt was less than accurate. Attempt (murder) requires defendant to intend to kill his victim *without lawful justification*, not simply to "[t]ry to kill." (See *Reagan*, 99 Ill. 2d at 240.) In context, however, the statement was not prejudicial to defendant's case. First, the prosecutor himself reviewed the proper law to be applied with the jury:

"Now the defendant is charged with attempted first-degree murder of Lynden Franco, and I believe the judge will instruct you that for the State to sustain the charge of attempt, the State must prove the following propositions: First, that the defendant performed an act which constituted a substantial step towards the commission of the offense of first-degree murder. Second, *that the defendant did so with the intent to commit the offense of first degree murder*, and third that the

defendant was not justified in using the force which he used." (Emphasis added.)

Second, the trial court repeated the proper instruction just prior to deliberations.

An appellate court must consider any misstatement of the law in the context and in light of the entire record to determine if it was improper or prejudicial. (*People v. Lozada* (1991), 211 Ill. App. 3d 817.) In light of the fact that the jury was properly instructed, and in light of the context in which the prosecutor's remarks were made, in which the prosecution's "[t]ry to kill" statement was not overemphasized, we find defendant was not prejudiced. See *People v. Campbell* (1980), 199 Ill. App. 3d 775 (prosecution's use of "wished to kill" language in explaining to jury attempted murder charge found to be harmless error).

■ Defendant's next argument concerns the prosecutor's rebuttal in closing. The prosecutor argued to that jury that if "you believe what the officers told you, you must find [defendant] guilty." Defense counsel's objection to this statement was sustained and the prosecutor immediately indicated to the jury that "[y]ou are to assess using your common sense as to who is telling the truth."

A prosecutor steps on thin ice when he argues that a defendant must be found guilty if the State's witnesses are believed or that an acquittal requires a finding that the State's witnesses have lied. (*People v. Crossno* (1981), 93 Ill. App. 3d 808. *Cf. People v. Wilson* (1990), 199 Ill. App. 3d 792; *People v. Ridley* (1990), 199 Ill. App. 3d 487; *People v. Ferguson* (1988), 172 Ill. App. 3d 1; *People v. Cole* (1980), 80 Ill. App. 3d 1105.) Such arguments tend to distract the jurors from a proper analysis of the evidence. Moreover, in the present case, the prosecutor's comments amounted to an inaccurate statement of the law, as the central issue of the case was defendant's state of mind at the time he shot Officer Franco. It is possible for the jury to have concluded that the officers who testified were truthful, but also believe that defendant was justified in his use of force. Nonetheless, such errors are subject to a harmless error analysis, and we note that this error was quickly corrected by the trial judge, who sustained the objection. (See *People v. Baptist* (1979), 76 Ill. 2d 19, 30.) In addition, the prosecutor himself made corrective comments which we believe rendered the error inconsequential.

■ Finally, defendant complains of the prosecutor's sarcastic reference in rebuttal to a fictional "Bible and crucifix." During the course of the trial, the defense presented eight character witnesses

who testified as to the defendant's reputation for honesty and nonviolence. The prosecutor argued:

> "Ladies and gentlemen, jury service is common sense business. You are not here to decide whether to canonize Juan Cruz. You are not to decide whether or not he may have been a nice person before January 1990. From all you have heard, if that is what you are here to decide you would probably sit there trying to decide how it was he got those drugs in his pockets because there would have been no room with the Bible and the crucifix stuck in there."

Defendant's counsel objected and his objection was overruled. The State argues that the prosecutor's comments were invited responses to the testimony of the character witnesses and to the defense counsel's comments to the jury that defendant was "everything that is good about this country" and "the cream of the crop."

The general rule is that a prosecutor may not voice personal opinion regarding guilt or credibility unless such comment is based on the evidence. (*People v. Johnson* (1987), 119 Ill. 2d 119, 139.) In addition, it is improper for a prosecutor to engage in inflammatory arguments designed to arouse the passions of the jury. (*Johnson*, 119 Ill. 2d at 139; *People v. Bryant* (1983), 94 Ill. 2d 514, 523.) The prosecutor's comments in this case were clearly improper as they were not relevant to the defendant's guilt or innocence and could only have been offered to inflame the jury. (See *People v. Tiller* (1982), 94 Ill. 2d 303, 321.) Sarcastic references by the State to fictional crucifixes, the blessed virgin Mary, the holy month of Ramadan or the prophet Elijah do nothing to focus the jury on the issues before them. Instead, they push beyond the bounds of proper courtroom decorum and, at the very least, have the tendency to insult. Improper remarks generally do not constitute reversible error, however, unless there is substantial prejudice to the accused. (*Johnson*, 119 Ill. 2d at 139-40.) Because the jury was specifically instructed that closing arguments are not evidence and that statements made during arguments not based upon the evidence should be disregarded, and because the prosecution did not dwell upon these improper comments, defendant's right to a fair trial was not affected.

■ Lastly, defendant argues that he should have received a shorter sentence based upon his youth, scholastic and family background, lack of criminal history and rehabilitative potential. In considering the propriety of punishment, a reviewing court must give great weight to the judgment of the trial court. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154;

*People v. Bergman* (1984), 121 Ill. App. 3d 100, 110.) Sentencing is a matter of judicial discretion and, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. (*Perruquet*, 68 Ill. 2d at 153.) In addition, the trial judge is in a better position to determine proper punishment than any court of appeal. *Perruquet*, 68 Ill. 2d at 154; *People v. Butler* (1976), 64 Ill. 2d 485, 490.

A reasoned judgment as to a proper sentence must be based upon the particular facts and circumstances of each individual case. (*Perruquet*, 68 Ill. 2d at 154.) Such a judgment depends upon many factors, including the gravity of the offense and the circumstances of commission, the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, age, and criminal history. (*Perruquet*, 68 Ill. 2d at 154; *People v. Duncan* (1981), 97 Ill. App. 3d 896, 899.) The sentencing judge is charged with the difficult task of fashioning a sentence which would strike the appropriate balance between protection of society and rehabilitation of the offender. (*People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541; *Bergman*, 121 Ill. App. 3d at 109.) Indeed, our own constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) This is not to say, however, that the objective of restoring the offender to useful citizenship is to be accorded greater consideration than that which establishes the seriousness of the offense. *People v. Waud* (1977), 69 Ill. 2d 588, 596; *Bergman*, 121 Ill. App. 3d at 109.

Section 5—4—1 of the Unified Code of Corrections provides that in sentencing a defendant the court consider the evidence received at trial; consider any presentence reports; consider evidence in and information offered by the parties in aggravation and mitigation; hear argument as to sentencing alternatives; and afford the defendant the opportunity to make a statement in his own behalf. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1(a).) In addition, this section directs the trial court to specify on the record the particular evidence, information, factors in mitigation and aggravation or other reason that led to his sentencing determination. Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1(c).

A review of the record indicates that the trial court carefully weighed the evidence presented at defendant's sentencing hearing and considered each of the factors now raised by defendant. The trial judge indicated on the record that he had considered the evidence in aggravation and mitigation; that he had considered the remarks of

defendant; that he recalled the evidence presented at trial and that he had read the presentence investigation report. He also stated that he was impressed with the fact that defendant's family and friends continued to support him. The trial court considered defendant's rehabilitative potential and stated that defendant was an intelligent young man who might one day achieve greater education. We conclude that under the facts of this case, a 30-year sentence is within the wide discretion properly accorded to the trial court.

In light of the foregoing, we affirm the judgment of the circuit court.

Affirmed.

McNAMARA, P.J., and RAKOWSKI, J., concur.